[No. 57513-9-I.   Division One.   March 12, 2007.]

KUSUM L. BATEY, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Deborah Maranville*, for appellant.

*Robert M. McKenna, Attorney General,* and *Bruce L. Turcott, Jerald R. Anderson,* and *Erika G.S. Uhl, Assistants,* for respondent.

¶1 BECKER, J. — Under our state constitution, portions of a bill not fairly expressed by its title are stricken as unconstitutional. At issue in this appeal is a bill changing the criteria for determining when an employee has good cause for a voluntary quit. The title of the bill is: "AN ACT Relating to making adjustments in the unemployment

insurance system to enhance benefit and tax equity; reenacting RCW 50.20.050; and creating a new section."[1] Because the title does not express the subject, the statute is unconstitutional.

¶2 It has long been a feature of the unemployment compensation system that workers who have "left work voluntarily without good cause" are disqualified from receiving unemployment benefits for a specified period of time. RCW 50.20.050(2)(a). The voluntary quit statute as it existed in 2002 set out four specific situations that constituted good cause for leaving work. In addition, the Employment Security Department had discretion to find good cause for reasons not specified in the statute. In a particular case, the commissioner might determine that changes in other work-related circumstances had caused hardship or deterioration in working conditions sufficient to justify the claimant's decision to quit:

> Good cause shall not be established . . . because of any other significant work factor which was generally known and present at the time he or she accepted employment, *unless the related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor or unless the commissioner determines that other related circumstances would work an unreasonable hardship on the individual were he or she required to continue in the employment.*

Former RCW 50.20.050(3) (2002) (emphasis added).

¶3 During a special session in 2003, the legislature decided to tighten up the voluntary quit criteria. The vehicle for the change was Second Engrossed Senate Bill 6097, a bill with 39 sections that amended Title 50 RCW in various ways. 2ESB 6097, 58th Leg., 2d Spec. Sess. (Wash. 2003). The fourth section of the bill amended the voluntary quit statute, RCW 50.20.050. With respect to claims with an effective date on or after January 4, 2004, the bill set out six more situations that would constitute good cause for leaving work. But the bill also removed the commissioner's

---

[1] EHB 3278, 59th Leg. (Wash. 2006).

discretion. Under the new scheme, a good cause for quitting had to be within the 10 scenarios listed in the statute.

¶4 The appellant in this case, Kusum Batey, worked as an advocate for the Snohomish County Center for Battered Women. She quit voluntarily in January 2005 and applied for unemployment benefits. Her reasons for quitting did not fit within the 10 "good cause" categories in RCW 50.20.050, and the Employment Security Department denied her application. Batey petitioned for review in superior court. She argued that 2ESB 6097, the bill that removed the discretionary language, was unconstitutional because it was passed in contravention of the subject-in-title require-ment of Const. art. II, § 19. The title of the bill referred to "creating forty rate classes for determining employer con-tribution rates."[2] 2ESB 6097, 58th Leg., 2d Spec. Sess. (Wash. 2003). Batey took the position that this title clearly does not encompass the subject matter of voluntary quits. Batey sought to have her case remanded to the Employ-ment Security Department for consideration under the discretionary language of the statute as it existed before the enactment of 2ESB 6097. This court accepted the superior court's certification for direct review in February of 2006. *See* RCW 34.05.518; RAP 6.3.

¶5 On review, the department does not defend the title of 2ESB 6097 against Batey's subject-in-title challenge. Instead, the department says that the legislature remedied any subject-in-title problem that may have existed with

---

[2] The full title of 2ESB 6097 was: "AN ACT Relating to revising the unemploy-ment compensation system through creating forty rate classes for determining employer contribution rates; amending RCW 50.01.010, 50.20.010, 50.20.050, 50.04.293, 50.20.060, 50.20.065, 50.20.240, 50.20.120, 50.20.100, 50.29.025, 50.04.355, 50.29.026, 50.29.062, 50.29.070, 50.12.220, 50.16.010, 50.16.015, 50.24.014, 50.20.190, 50.04.206, 50.20.140, 50.20.043, 50.20.160, 50.32.040, and 28B.50.030; reenacting and amending RCW 50.29.020; adding new sections to chapter 50.04 RCW; adding new sections to chapter 50.20 RCW; adding new sections to chapter 50.29 RCW; creating new sections; repealing RCW 50.20.015, 50.20.045, 50.20.125, and 50.29.045; providing an expiration date; and declaring an emergency."

2ESB 6097 by reenacting its provisions retroactively in 2006 in a bill with a proper title.[3]

¶6   Batey does not dispute that the legislature *could* have cured the defect in the title of 2ESB 6097 by reenacting it retroactively in a bill with a proper title. She contends, however, that the legislature's attempt to cure the defect likewise fails the subject-in-title test.

¶7   The 2006 bill is Engrossed House Bill 3278, with the title "AN ACT Relating to making adjustments in the unemployment insurance system to enhance benefit and tax equity; reenacting RCW 50.20.050; and creating a new section." EHB 3278, 59th Leg. (Wash. 2006). As passed by the House on February 14, 2006, the bill's objective was modest: to extend by two months the deadline for a previously created "joint legislative task force on unemployment insurance benefit equity" to report its findings and recommendations to the legislature. H. amend. 939.

¶8   The subject matter of House Bill 3278 changed dramatically on March 3, 2006, when the Senate adopted a striking amendment. After stripping out all of the language pertaining to the task force and its deadline, the Senate amendment inserted language reenacting the substance of the voluntary quit amendments contained in 2ESB 6097 (the bill passed in 2003). The Senate amendment provided that the bill would apply retroactively "to claims that have an effective date on or after January 4, 2004." LAWS OF 2006, ch. 12, § 2. As shown by a note to the Senate amendment, it was designed to deflect Batey's pending lawsuit: "*EFFECT*: Reenacts, retroactively, the 'good cause quit' section of Second Engrossed Senate Bill No. 6097 (a section that was potentially under challenge in Batey v. Employment Security Department)." S. amend. 365. The House and Senate

---

[3] The 2003 bill amends an earlier act, while the 2006 bill reenacts an earlier act. Because the department does not defend Batey's subject-in-title challenge to the 2003 bill, we need not enter what the department at oral argument referred to as the "dark and bloody ground" of *City of Fircrest v. Jensen*, 158 Wn.2d 384, 143 P.3d 776 (2006) (three separate opinions about whether the relevant title in a challenge to an amendatory act is the one belonging to the original act or the one belonging to the amendatory act).

both passed Engrossed House Bill 3278 on March 3, 2006, with the House concurring in the Senate amendment.

■ ¶9 Our constitution states: "No bill shall embrace more than one subject, and that shall be expressed in the title." CONST. art. II, § 19. In this case, we are concerned only with the subject-in-title requirement of this provision, not the single-subject rule. The Supreme Court has long interpreted article II, section 19 as requiring a bill's title to give concise information about the contents of the bill. "The wisdom of the rule suggests itself, in that the reader, whether a member of the legislature or otherwise, may, by a mere glance at a few catch words in the title, be apprised of what the act treats, without further search." *State ex rel. Seattle Elec. Co. v. Superior Court*, 28 Wash. 317, 321, 68 P. 957 (1902). The title should "most especially" be sufficient to give notice to parties whose rights and liabilities are affected by the bill. *Patrice v. Murphy*, 136 Wn.2d 845, 854, 966 P.2d 1271 (1998). The title need not be an index to the contents of the bill. It is sufficient if the title "gives such notice as should reasonably lead to an inquiry into the body of the act itself, or indicates, to an inquiring mind, the scope and purpose of the law." *State ex rel. Wash. Toll Bridge Auth. v. Yelle*, 32 Wn.2d 13, 26, 200 P.2d 467 (1948).

■ ¶10 To decide whether a title gives adequate notice, a court must first determine whether the title is broad or narrow. Where a bill's title is general, " 'any subject reasonably germane to such title may be embraced within the body of the bill.' " *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 633, 71 P.3d 644 (2003) (quoting *DeCano v. State*, 7 Wn.2d 613, 627, 110 P.2d 627 (1941)). A restrictive title will be more carefully scrutinized:

> If the title is general and comprehensive, it will be given a liberal construction; in such case, no elaborate statement of the subject of the act is necessary, and a few well-chosen words suggestive of the general subject treated is all that is required. If, however, the title is a restricted one, it will not be regarded so liberally, and provisions which are not fairly within such restricted title will not be given force.

*State ex rel. Wash. Toll Bridge Auth.*, 32 Wn.2d at 26. Examples of bill titles judged to be restrictive are: " 'Shall criminals who are convicted of "most serious offenses" on three occasions be sentenced to life in prison without parole?' " *State v. Thorne*, 129 Wn.2d 736, 757, 921 P.2d 514 (1996) (quoting ballot title of Initiative 593 (1993)); " 'AN ACT Relating to the acquisition of property by public agencies . . . .' " *Daviscourt v. Peistrup*, 40 Wn. App. 433, 437, 698 P.2d 1093 (1985) (quoting LAWS OF 1971, 1st Ex. Sess., ch. 39); " 'An act Relating to increasing penalties for armed crimes . . . .' " *State v. Broadaway*, 133 Wn.2d 118, 123, 942 P.2d 363 (1997) (quoting LAWS OF 1995, ch. 129).

¶11 The department argues that EHB 3278's title is broad and general, but in doing so the department focuses only on that part of the title referring to "making adjustments in the unemployment insurance system." The full title is: "AN ACT Relating to making adjustments in the unemployment insurance system to enhance benefit and tax equity; reenacting RCW 50.20.050; and creating a new section." In specifying that the adjustments are intended "to enhance benefit and tax equity," the title becomes restrictive; it does not suggest a bill that might embrace any and all manner of changes to the unemployment insurance system.

¶12 The department contends that even if the title is judged to be restrictive, it still should be construed as giving fair notice that the bill changes eligibility requirements for unemployment benefits. Any change in eligibility, according to the department, is likely to have some effect upon benefits paid to employees and tax premiums paid by employers. This argument is not persuasive. The title says the adjustments in the bill will enhance "benefit and tax equity." Employees—a group particularly affected by EHB 3278—would not reasonably be expected to recognize this phrase as a signal that legislators had decided to change the good cause criteria for voluntary quits.

¶13 The Supreme Court has held that the title "AN ACT Relating to court costs" violated the subject-in-title rule

because the title, while appearing to refer to procedural matters, disguised a "hidden effect"—the bill imposed upon local government a new substantive duty to hire sign language interpreters to assist with police investigations. *Patrice*, 136 Wn.2d at 855. This came about because the legislature picked up the substance of a bill requiring interpreters, which could not pass on its own due to time constraints, and rolled it into a bill on court costs that was still within time limits and eligible for consideration. Similarly here, changing the voluntary quit criteria is a hidden effect of EHB 3278. The title's reference to "benefit and tax equity" disguised the fact that the bill no longer had anything to do with the special committee study on benefit equity and had become instead a last minute vehicle to change the good cause criteria for voluntary quits.

¶14 The title's reference to RCW 50.20.050 as the statute being reenacted is also insufficient to give proper notice. A "'mere reference'" to a section in the title of an act does not state a subject. *Fray v. Spokane County*, 134 Wn.2d 637, 654-55, 952 P.2d 601 (1998) (quoting *State ex rel. Seattle Elec. Co.*, 28 Wash. at 325).

¶15 We conclude chapter 12, Laws of 2006 must be struck down because the enacting bill, EHB 3278, does not meet the constitutional subject-in-title requirement. Because EHB 3278 is unconstitutional, it cannot cure the undisputed subject-in-title defect in 2ESB 6097 as it relates to section 4 of that bill. Therefore, we also hold unconstitutional section 4 of chapter 4, Laws of 2003, Second Special Session.[4]

¶16 Batey requests attorney fees as provided by RCW 50.32.160 when a court reverses or modifies a decision by the commissioner. We reject this request because it was made for the first time in her reply brief. RAP 18.1(b).

---

[4] We make no determination as to other provisions of chapter 4, Laws of 2003, Second Special Session. *See Patrice*, 136 Wn.2d at 855.

The Appellant did not challenge chapter 13, Laws of 2006, section 2. She stated in her brief that it "does not affect this case" and that, with respect to the subject-in-title requirement of article II, section 19, it properly amended RCW 50.20.050 prospectively in a manner similar to the 2003 amendments. Therefore, we make no determination as to the constitutionality or legality of the amendments to RCW 50.20.050 contained in chapter 13, Laws of 2006, section 2.

¶17 Reversed and remanded to determine whether Batey's reasons for quitting constitute good cause under RCW 50.20.050 as it existed in 2002.

SCHINDLER, A.C.J., and GROSSE, J., concur.

Reconsideration granted and opinion modified May 16, 2007.