[No. 58664-5-I.   Division One.   September 17, 2007.]

Ruby L. Gaines, *Appellant*, v. The Employment Security Department, *Respondent*.

*Marcus R. Lampson* (of *Unemployment Law Project*), for appellant.

*Robert M. McKenna, Attorney General,* and *Gregory M. Worthy, Assistant,* for respondent.

¶1 GROSSE, J. — Under the Employment Security Act (Act), Title 50 RCW, an otherwise eligible individual is not to be denied unemployment benefits while in commissioner approved training (CAT) or while satisfactorily progressing in a training program with the approval of the commissioner, for reasons relating to the availability for work or by the failure to apply for, or refuse to accept, suitable work. Under the required liberal interpretation of the Act and the specific facts of this case, the commissioner erroneously concluded the employee/trainee was disqualified from receiving benefits by voluntarily leaving work without good cause. We reverse the decision of the commissioner and reinstate the decision of the administrative law judge (ALJ).

## FACTS

¶2 Ruby Gaines worked for King County for over 21 years. She lost her job due to a reduction in force. She applied for and received unemployment benefits from the Employment Security Department (Department). Gaines was also granted a year of CAT. To continue to receive unemployment benefits, CAT trainees are not required to (1) be available for work, (2) actively seek work while in

training, or (3) accept offers of suitable work.[1] Gaines received a notice approving her application for CAT. This notice set forth a number of responsibilities, including a warning that if she took a job and quit it while in training, she "could be denied benefits under the voluntary quit provisions of state law." Gaines began a course at Edmonds Community College and did well, and satisfactory progress was reported to the Department.

¶3 To gain additional income while attending CAT, Gaines undertook a part-time job with the Downtown Emergency Service Center (DESC). She worked for 11 days as a part-time, on-call shelter counselor. Gaines reported the income to the Department, and her benefits were reduced accordingly.

¶4 Within days of starting this work, DESC offered Gaines full-time work at a rate of approximately half of what she was making when she left the employ of the county. Gaines never accepted this job and also quit the part-time position. Gaines left the position because she could not continue to make progress as a full-time student and work a part- or full-time job. She also decided the job was unsuitable. When Gaines told DESC of her decision to discontinue working, DESC reported the decision to the Department, and it then denied the benefits she already was receiving, including the CAT grant, and assessed an *overpayment* to her in benefits received in a range of approximately $1,000 to $1,200.

¶5 Gaines appealed the denial of benefits and the assessment. The ALJ for the Department overturned the holding and determined that Gaines' attempt at the part-time job for 11 days did not disqualify her from receiving benefits. The ALJ concluded that Gaines' departure from the part-time job constituted a job refusal of an unsuitable position as opposed to a voluntary quit situation.

¶6 DESC appealed the ALJ's decision to the commissioner. The commissioner accepted the ALJ's findings of fact

---

[1] RCW 50.20.043 (training provision of the unemployment compensation statute).

but rejected the ALJ's conclusions. The commissioner concluded that Gaines' part-time, on-call employment at DESC for 11 days constituted acceptance of an offer of employment and that she voluntarily quit that employment. The commissioner determined that in order for Gaines to keep her benefits, she could quit only for good cause. Applying the 10 exclusive circumstances considered to be "good cause" at the time of his decision,[2] the commissioner determined that Gaines voluntarily quit the position without good cause.

¶7 Gaines appealed to the King County Superior Court. The superior court affirmed the decision of the commissioner. From that decision, Gaines appeals.

¶8 The facts of this case are unusual, and we limit our holding to those presented. Here, the ALJ found and the commissioner agreed to the following paraphrased facts:

1. Ruby Gaines received a determination that her training at Edmonds Community College was approved as CAT. Based on that determination, she was not required to be available for work or to actively seek work so long as she remained in the approved training and met the requirements of CAT. She was not obligated to accept offers of suitable work.

2. Gaines was enrolled at Edmonds Community College on a full-time basis in a basic office skills program. She had a 3.75 grade average. Prior to enrollment in school, she earned between $17.69 and $24.60 per hour in her 21 years of employment.

3. In an effort to supplement her income, while attending school, Gaines took a part-time on-call position as a shelter counselor and was paid $9.75 an hour.

4. After 11 days, it became clear to Gaines that her studies were suffering as a result of the job. Her priority was to complete her CAT program and obtain necessary skills to further her employment opportunities. It took her the period of almost two weeks to realize that the position was interfering with her studies.

---

[2] RCW 50.20.050(2)(b)(i)-(x). Subsequent to the commissioner's decision, this section of the statute has been declared unconstitutional. See discussion as set forth later in this opinion.

As noted above, from these facts the ALJ and the commissioner reached different conclusions regarding whether Gaines is entitled to a continuation of benefits.

*Standard of Review*

■ ¶9 The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs review of a final decision by the commissioner of the Department.[3] A party will be provided relief from an adverse administrative decision if the law is erroneously interpreted or applied by the agency or if the order is not supported by substantial evidence on the record.[4]

■ ¶10 In reviewing an administrative decision, this court sits in the same position as the trial court, applying the WAPA standards directly to the record considered by the agency.[5] An agency's findings of fact and regulatory interpretations are granted appropriate deference.[6] However, questions of law are reviewed de novo. Whether the law was correctly applied to the facts as found by the agency is also a question of law that this court reviews de novo.[7] As stated in *Overton v. Economic Assistance Authority*:[8]

> Where an administrative agency is charged with administering a special field of law and endowed with quasi-judicial functions because of its expertise in that field, the agency's construction of statutory words and phrases and legislative intent should be accorded substantial weight when undergoing judicial review. We also recognize the countervailing principle

[3] RCW 34.05.510; *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[4] RCW 34.05.570(3)(d), (e).

[5] *Tapper*, 122 Wn.2d at 402.

[6] *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 879, 154 P.3d 891 (2007) (citing *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988)).

[7] *Tapper*, 122 Wn.2d at 403.

[8] 96 Wn.2d 552, 555, 637 P.2d 652 (1981) (citations omitted).

that it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law.

In other words, courts retain the ultimate responsibility for interpreting a statute or regulation.[9]

ANALYSIS

▇ ¶11 The legislature specifically sets forth that the Act is to be interpreted liberally. After accidentally removing the liberal interpretation language of the statute while amending the Act in 2004, in 2005 the legislature reinstated the language. The new section states in part that

the legislature further finds that the system is falling short of [the Act's] goals by failing to recognize the importance of applying liberal construction for the purpose of reducing involuntary unemployment, and the suffering caused by it, to the minimum, and by failing to provide equitable benefits to unemployed workers.[10]

The legislature also added to the preamble of the Act that "this title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum."[11] As a commentator on state laws regarding unemployment compensation statutes has said:

Unemployment compensation statutes were enacted for the purpose of relieving the harsh economic, social and personal consequences resulting from unemployment. If these statutes

---

[9] *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 137 Wn. App. 592, 598, 154 P.3d 287 (2007) (citing *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999)).

[10] Laws of 2005, ch. 133, § 1, at 377.

[11] RCW 50.01.010; Laws of 2005, ch. 133, § 2, at 377.

are to accomplish their purpose, they must be given a liberal interpretation.[12]

■ ¶12 The ALJ determined Gaines had good cause to refuse the employment, and that although Gaines initially undertook a part-time, on-call job with DESC, it took her only a short time to determine it was unsuitable for her, especially as a student in the CAT.[13] The ALJ concluded Gaines was not even obligated to accept suitable positions while in CAT, so given the circumstances, the ALJ found that Gaines certainly was not obligated to accept an *unsuitable* position. Therefore, the ALJ held Gaines was not disqualified from receiving benefits pursuant to former RCW 50.20.100 (2002)[14] and RCW 50.20.080.[15]

---

[12] 3A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 74.7, at 921-23 (6th ed. 2003) (footnotes omitted) (citing cases from 35 states, including *Employees of Pacific Maritime Ass'n v. Hutt*, 88 Wn.2d 426, 562 P.2d 1264 (1977)).

[13] RCW 50.20.043 is an eligibility section for those in CAT programs. It states in pertinent part:

No otherwise eligible individual shall be denied benefits for any week because the individual is in training with the approval of the commissioner, nor shall such individual be denied benefits with respect to any week in which the individual is satisfactorily progressing in a training program with the approval of the commissioner by reason of the application of RCW 50.20.010(1)(c), 50.20.080, or 50.22.020(1) relating to availability for work and active search for work, or failure to apply for or refusal to accept suitable work.

[14] Former RCW 50.20.100 provides in relevant part:

(1) Suitable work for an individual is employment in an occupation in keeping with the individual's prior work experience, education, or training. . . . In determining whether work is suitable for an individual, the commissioner shall also consider the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness, the individual's length of unemployment and prospects for securing local work in the individual's customary occupation, the distance of the available work from the individual's residence, and such other factors as the commissioner may deem pertinent, including state and national emergencies.

[15] RCW 50.20.080 provides in pertinent part:

An individual is disqualified for benefits, if the commissioner finds that the individual has failed without good cause, either to apply for available, suitable work when so directed by the employment office or the commissioner, or to accept suitable work when offered the individual, or to return to his or her customary self-employment (if any) when so directed by the commissioner. Such disqualification shall begin with the week of the refusal and thereafter for seven calendar weeks and continue until the individual has obtained bona fide

¶13 The commissioner disagreed. In reversing the decision of the ALJ, the commissioner concluded that by working for 11 days, Gaines accepted an offer of employment, at which point RCW 50.20.080 (disqualification for refusal to work) and the suitability factors of RCW 50.20.100 were no longer applicable. Because Gaines accepted employment and then quit, the commissioner determined that the case must necessarily be decided under RCW 50.20.050(2).[16] That statute provides that unless good cause is established for quitting work, a claimant is disqualified from benefits. The commissioner noted there were 10 exclusive circumstances providing good cause for quitting work under the statute, none of which admittedly were in play for Gaines. Thus, the commissioner concluded that good cause was not established and Gaines was disqualified from receiving benefits under the disqualification for voluntarily leaving work without good cause provision of RCW 50.20.050(2)(a).[17] The commissioner remanded the case to the Department to determine the proper amount of overpayment.

¶14 But the commissioner's decision provides no authority for his determination that once Gaines undertook work, she could quit *only* for good cause. The commissioner's decision is particularly troublesome given (1) the legislature's intent that the Act be liberally construed, (2) the fact

work in employment covered by this title and earned wages in that employment of not less than seven times his or her suspended weekly benefit amount.

[16] RCW 50.20.050(2) states in pertinent part:

With respect to claims that have an effective date on or after January 4, 2004:
    (a) An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has left work voluntarily without good cause . . . .

[17] After the commissioner's decision issued in this case, *Batey v. Employment Security Department*, 137 Wn. App. 506, 513-14, 154 P.3d 266 (2007) invalidated, as unconstitutional, the Laws of 2006 (ch. 12, § 1) reenacting the Laws of 2003 (2d Spec. Sess., ch. 4, § 4) amending RCW 50.20.050 to establish the 10 exclusive good cause reasons for voluntarily quitting employment without becoming disqualified for unemployment benefits. Thus, even if we were to agree with the commissioner that this case must be decided only under the voluntary quit rules, which we do not, the case would have to be remanded for a determination under RCW 50.20.050 as it existed in 2002. Considering our decision, a remand is unnecessary.

that Gaines was in approved training under the training section of the statute (RCW 50.20.043), and (3) that she argued the unsuitability of the employment. The commissioner claimed he was not required to consider the suitability of the work under RCW 50.20.100.

¶15 On the other hand, the ALJ appropriately considered the suitability of the work under the statute and correctly determined that Gaines refused to work as a part- or full-time on-call counselor, after a short period, because the work was unsuitable. The ALJ was correct in concluding that Gaines' leaving work after 11 days more properly constituted a refusal to work as allowed under the training provisions. This refusal does not disqualify Gaines from receiving benefits. The commissioner's argument that he did not adjudicate the matter under the work refusal statute, RCW 50.20.080, because it does not apply once a claimant accepts work, begs the question and the stated purposes of the Act. It is because Gaines showed that the work was unsuitable that the ALJ correctly found she could refuse the work. Contrary to the commissioner's argument that the ALJ did not make any *findings* as to the suitability of the job, the ALJ specifically concluded the part-time job was unsuitable.

¶16 We point out that neither the commissioner nor the ALJ cited RCW 50.20.118, which discusses unemployment while in approved training. The statute sets forth:

> (1) Notwithstanding any other provision of this chapter, an otherwise eligible individual shall not be denied benefits for any week because he or she is in training approved under section 236(a)(1) of the Trade Act of 1974, P.L. 93-618, nor may that individual be denied benefits for any such week by reason of *leaving work which is not suitable employment to enter such training, or for failure to meet any requirement of federal or state law for any such week which relates to the individual's availability for work, active search for work, or refusal to accept work.*[18]

---

[18] RCW 50.20.118 (emphasis added).

¶17 The position taken by the commissioner fails to recognize the statutory scheme that an individual may not be denied benefits by reason of leaving unsuitable employment to enter (or stay in) training or refusing work. At the very least, a liberal interpretation of the overall employment security statutory scheme requires the commissioner to determine the suitability of the employment, especially in light of the training provision of RCW 50.20.043 and the suitability factors of RCW 50.20.100.

¶18 The commissioner relies on the prior employment security decision of *In re Stewart*[19] to support his conclusion. In *Stewart*, the commissioner held that those who quit suitable employment in order to engage in approved training were disqualified from receiving benefits. But we find *Stewart* to be inapposite to this case because it does not speak to those who quit *unsuitable* employment.[20]

¶19 Among other reasons, the commissioner's failure to consider the suitable work factors led to an erroneous interpretation of the Act. We reverse the decision of the commissioner and reinstate the decision of the ALJ.

■ ■ ¶20 Gaines seeks attorney fees and costs. She asks for fees from the unemployment compensation administration fund. Because we agree that the commissioner erroneously interpreted the Act, making Gaines the prevailing party on appeal, she is entitled to reasonable attorney fees for proceedings in the superior court and this court.[21] Gaines must comply with RAP 18.1. Contrary to the argument of counsel for Gaines, there is no award of

[19] *In re Stewart*, No. 72-4799 (Wash. Dep't of Employment Sec. Comm'r Dec. No. 948 Jan. 22, 1973).

[20] It is interesting to note that the *Stewart* decision ultimately granted benefits to the claimant because he had *good cause* for quitting the job. This *good cause* was the commissioner's determination that the job quit was unsuitable. There, the commissioner indicated he was required by the suitable work factors of RCW 50.20.100 to consider prior training experience and earnings among other factors. Thus, in *Stewart* the commissioner determined that the janitorial work for an aircraft mechanic was not suitable work and to hold otherwise would be to subvert some of the basic purposes of the Act.

[21] RCW 50.32.160; *Ancheta v. Daly*, 77 Wn.2d 255, 265-67, 461 P.2d 531 (1969); *Barker v. Employment Sec. Dep't*, 127 Wn. App. 588, 596, 112 P.3d 536 (2005)

fees from the state fund for proceedings at the administrative level.[22]

¶21 The commissioner's decision is reversed, and the case is remanded for reinstatement of benefits as determined by the ALJ, and for an award of attorney fees and costs at the superior and appellate court levels.

SCHINDLER, A.C.J., and COLEMAN, J., concur.

Reconsideration denied October 30, 2007.

(quoting *Albertson's, Inc. v. Employment Sec. Dep't,* 102 Wn. App. 29, 47, 15 P.3d 153 (2000)).

[22] *Ancheta,* 77 Wn.2d at 266-67.