185 P.3d 1188 (2008)
Sara D. SPAIN, Petitioner,
v.
The EMPLOYMENT SECURITY DEPARTMENT, Respondent.
Kusum L. Batey, Respondent, and
The Employment Security Department, Petitioner, and
Snohomish County Center for Battered Women, Additional Party.
Nos. 79878-8, 80309-9.
Supreme Court of Washington, En Banc.
Argued February 26, 2008.
Decided June 19, 2008.
*1189 Marcus Robert Lampson, Unemployment Law Project, Seattle, WA, for Petitioner Sara D. Spain.
Deborah Maranville, U. of Washington, School of Law, Seattle, WA, for Respondent Kusum L. Batey.
Jay Douglas Geck, Jerald R. Anderson, Olympia, Erika G.S. Uhl, Seattle, Atty. General's Office, for Dept. of Employment Security.
Kristopher Ian Tefft, Association of Washington Business, Olympia, WA, for Amicus Curiae on behalf of Association of Washington Bus.
Hong Thi Tran, Marcus Robert Lampson, John Tirpak, Unemployment Law Project, Seattle, WA, Laurie A. Powers, Unemployment Law Project, Spokane, WA, for Amicus Curiae on behalf of Unemployment Law Project.
Michael Christopher Hoover, Martin Lovinger, Office of Senate Counsel, Timothy George Sekerak, House of Representatives, Olympia, WA, Michele G. Radosevich, Davis Wright Tremaine LLP, Seattle, WA, for Amicus Curiae on behalf of Washington State Legislature.
CHAMBERS, J.
¶ 1 Washington enacted an unemployment compensation act during an earlier time of great economic insecurity and unemployment to "lighten its burden which now so often falls with crushing force upon the unemployed worker." LAWS OF 1937, ch. 162, § 2. Since the beginning, the system focused on easing that burden on those of us who are in voluntarily out of work. See generally id. ch. 162. But our legislature did not disqualify all workers who voluntarily left their jobs, only workers who left "voluntarily without good cause." Id. § 5. Section 5 has since expanded and transformed in many ways, but the phrase "voluntarily without good cause" has remained its pivot point.
¶ 2 Our legislature has never defined "good cause." It has, however, recently amended the statutory language around it such that "(a) [a]n individual shall be disqualified from benefits [if] he or she has left work voluntarily without good cause [but] (b) . . . is not disqualified from benefits under (a) of this subsection when" he or she has voluntarily left work for a specific reason set forth in the statute. Former RCW 50.20.050(2)(2006).[1] We must decide whether the statutory list of reasons that do not disqualify an individual from benefits is also an exhaustive list of good cause reasons to voluntarily leave a job without losing benefit eligibility. We conclude it is not. Accordingly, we remand both cases to the Washington Department of Employment Security (Employment Security or Department) to determine whether either Sara Spain or Kusum Batey had good cause to leave their jobs based on the merits of their individual claims.

BACKGROUND
¶ 3 Both Spain and Batey tell us they left their jobs because they found their employers unbearable. Spain suffered daily verbal abuse. Batey left her job with a battered women's shelter after sharply disagreeing with management on how their clients should be treated, among other things. Both unsuccessfully sought unemployment benefits. Importantly, no trier of fact has found that Spain and Batey did not leave their jobs because their employers were abusive, which historically has been a nondisqualifying reason for voluntarily leaving employment without losing eligibility for benefits. See, e.g., In re Pischel, Docket No. 1-00862, Wash. Dep't of Employment Sec. Comm'r Dec.2d 672 (May 22, 1981) (verbal abuse).[2]
¶ 4 The Department concluded in both cases that it no longer had the statutory authority to grant unemployment benefits when an employee voluntarily leaves a job for any reason other than those listed as not *1190 disqualifying in former RCW 50.20.050(2). Since, the Department concluded, neither Spain nor Batey had left for those reasons, they were both denied benefits. Both appealed. Spain argued that Employment Security had misunderstood the legislation: that employees were still eligible for unemployment benefits if compelling personal reasons created good cause to leave their jobs. Batey argued that the legislature's attempt to amend the law was ineffective because the bill titles did not adequately state the subject of the law. Batey won at the Court of Appeals. Batey v. Employment Sec. Dep't, 137 Wash.App. 506, 154 P.3d 266 (2007). Spain won at the superior court level and lost at the Court of Appeals. Spain v. Employment Sec. Dep't. noted at 137 Wash App. 1005, 2007 WL 404712, 2007 Wash App. LEXIS 200. We granted review for both petitions. 162 Wash.2d 1010, 178 P.3d 936 (2008).

ANALYSIS
¶ 5 Only questions of law are presented. Our review is de novo. Dreiling v. Jain, 151 Wash.2d 900, 908, 93 P.3d 861 (2004) (citing Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994)). Due deference is given to the agency's interpretation of the statutes it implements. See State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n, 140 Wash.2d 615, 635-36, 999 P.2d 602 (2000). The statute before us says in relevant representative part:
(2) With respect to claims that have an effective date on or after January 4, 2004:
(a) An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has left work voluntarily without good cause. . . .
. . . .
(b) An individual is not disqualified from benefits under (a) of this subsection when:

(i) He or she has left work to accept a bona fide offer of bona fide work as described in (a) of this subsection;
(ii) The separation was necessary because of the illness or disability of the claimant or the death, illness, or disability of a member of the claimant's immediate family. . . .
Former RCW 50.20.050. The statute lists other reasons for voluntarily leaving a job that are "not disqualif[ying]." Id. § (2)(b).[3]
¶ 6 The employee claimants argue that by the statute's plain terms, there are still two categories of good cause: a broad undefined category established by former RCW 50.20.050(2)(a) and a narrow category defined by the specific reasons listed in former RCW 50.20.050(2)(b)(i)-(x). The State argues that by the statute's plain terms, good cause is restricted to the nondisqualifying reasons listed in former RCW 50.20.050(2)(b)(i)-(x).
¶ 7 This statute is not a model of clarity and both sides propose tenable interpretations. Statutes that can be reasonably interpreted multiple ways are ambiguous. Shoreline Cmty. Coll. Dist. No. 7 v. Employment Sec. Dep't, 120 Wash.2d 394, 405, 842 P.2d 938 (1992) (citing Yakima v. Int'l Ass'n of Fire Fighters, Local 469, 117 Wash.2d 655, 669, 818 P.2d 1076 (1991)). In such cases, courts may turn to extrinsic evidence of legislative intent, such as legislative history. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001) (citing Harmon v. Dep't of Soc. & Health Servs., 134 Wash.2d 523, 530, 951 P.2d 770 (1998)).[4]
*1191 ¶ 8 The difficulty with the State's position is that the legislature did not say that "good cause is" the 10 (now 11) listed categories. This is not a classic case of expressio unius est exclusio alterius, as it would be if the statute had simply said "good cause is" those legislatively blessed reasons for voluntarily leaving a job. Cf. Wash. Natural Gas Co. v. Pub. Util. Dist. No. 1, 77 Wash.2d 94, 98, 459 P.2d 633 (1969) ("Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature. . . ."). Instead the statute says that employees "shall be disqualified" if they "[leave] work voluntarily without good cause" and are "not disqualified" if they leave work for the specified reasons. Former RCW 50.20.050(2)(a), (b). That can be read very naturally to mean either that only those listed reasons are sufficient or that a worker is disqualified if she left her work voluntarily without good cause and is not disqualified if she left for certain statutory reasons.
¶ 9 We can also see how this awkward statutory phrasing could be intended to accomplish what the State contends it did accomplish. Originally, the disqualification statute did not attempt to define "good cause" in any way, leaving it to Employment Security to decide on a case by case basis. LAWS OF 1937, ch. 162, § 5. Then, for a time, the disqualification statute effectively created two categories of good cause: good cause per se and good cause arising out of compelling personal reasons. LAWS OF 1977, 1 st Ex. Sess., ch. 33, § 4 (creating subsections 2-4 of the statute) (codified as former RCW 50.20.050 (1977)).[5] But this 1977 statute certainly did not create the Department's power to find good cause; instead, it merely limited its preexisting discretion to determine it existed. Former RCW 50.20.050(3) (1977); see generally Ayers v. Dep't of Employment Sec., 85 Wash.2d 550, 553, 536 P.2d 610 (1975); In re Bale, 63 Wash.2d 83, 385 P.2d 545 (1963). The 2003 amendments amended language that had served various purposes over the years, rather than use new language to serve a new purpose. Viewed historically, and given how easy it would have been for the legislature to say "good cause means," we are persuaded the legislature did not intend to create an exclusive list of good cause reasons to voluntarily quit.
¶ 10 Amicus Association of Washington Business contends that the statutory list was intended to be exclusive and that exclusivity was "the finishing stroke of a multi-year public policy compromise between business and labor over the nature of the Unemployment Insurance system . . . and the eligibility for unemployment benefits for persons who voluntarily leave their job[s]." Amicus Br. at 1. This may well be true. Unfortunately, we have not been presented with compelling evidence of this underlying legislative purpose by either of the parties.
¶ 11 Instead, we discern no clear intent from the legislative history. Illustratively, the State draws our attention to a 2003 bill report as evidence the legislature intended to eliminate the commissioner's discretion. One page reports that the bill "[n]arrows the reasons for `good cause' quits," among other things. H.B. REP. on Second Engrossed S.B. 6097, at 1, 58th Leg., 2d Spec. Sess. (Wash. 2003). That supports the State's position. But later, the bill report elaborates that:
Good cause, as specified in the Act, means leaving work: (1) to accept other work; (2) because of illness or disability, after taking *1192 precautions to preserve employment status with the employer; (3) to relocate for the spouse's employer-initiated mandatory job transfer; and (4) to protect the claimant or immediate family member from domestic violence. In addition, the Commissioner may determine that other work-related factors are good cause for leaving work.

Id. at 3 (emphasis added). The final sentence supports Spain's contention that at least some compelling personal circumstances could qualify as "good cause." We do not find this, or the other on-line bill reports we reviewed, particularly helpful in resolving this issue.[6]
¶ 12 Time and time again, we are compelled to return to the words of the statute itself. It declares that "(a) [a]n individual shall be disqualified from benefits [if] he or she has left work voluntarily without good cause [but] (b) . . . is not disqualified from benefits under (a) of this subsection when" he or she has voluntarily left work for listed reasons. Former RCW 50.20.050(2) (emphasis added). There are two key terms here, "good cause," and "disqualified." It is an "elementary rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." United Parcel Serv., Inc. v. Dep't of Revenue, 102 Wash.2d 355, 362, 687 P.2d 186 (1984) (citing Seeber v. Pub. Disclosure Comm'n, 96 Wash.2d 135, 139, 634 P.2d 303 (1981)). Such different language is used here. We find this outweighs the agency's interpretation and conclude that the statutory list of nondisqualifying reasons for voluntarily leaving a job does not do double duty as an exclusive list of good cause reasons to leave a job.[7] Accordingly, we need not reach whether the 2003 and 2006 bill titles were adequate under article II, section 19 of the Washington Constitution or whether Division One of the Court of Appeals exceeded its authority by taking a hard look at the floor history of the amendatory acts.[8]
¶ 13 Finally, prevailing employees are entitled to reasonable attorney fees and statutory costs. RCW 50.32.160. Spain properly and timely moved for attorney fees, which are granted.

CONCLUSION
¶ 14 We reverse Division Two of the Court of Appeals in Spain, 137 Wash.App. 1005, 2007 WL 404712, 2007 Wash.App. LEXIS 200, affirm Division One of the Court of Appeals in Batey, 137 Wash.App. 506, 154 P.3d 266, on different grounds, and remand both cases to Employment Security to determine, based upon the individual facts of the case and without regard to former RCW *1193 50.20.050(2), whether these employees had good cause to leave their jobs.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, RICHARD B. SANDERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, DEBRA L. STEPHENS, JJ., and BARBARA A. MADSEN, J., result only.
NOTES
[1] When this case was filed at this court, there were 10 specifically nondisqualifying reasons set forth in RCW 50.20.050(2). The 2008 legislature added an 11th. LAWS OF 2008, ch. 323, § 2(b)(xi). We assume without deciding that it is not relevant to the case before us.
[2] We, of course, make no judgment on whether Spain or Batey would in fact qualify. We are not asked to decide whether Batey has preserved a claim similar to the type asserted by Spain, but we assume without deciding that she may maintain such a claim on remand. The State has not objected.
[3] Those remaining reasons are, in essence, relocation of a military spouse, protection of the claimant or immediate family member from domestic violence or stalking, a 25 percent or more reduction in pay, a 25 percent or more reduction in hours, a change in the worksite resulting in increased distance or difficulty in travel, an unsafe workplace, illegal activities on the worksite, and a change in work that violates the claimant's religious or moral beliefs. Former RCW 50.20.050(2)(b)(B).
[4] For most of the history of the Employment Security Act, ch. 50.01 RCW, the legislature directed that it "be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." RCW 50.01.010. This language was removed by the 2003 legislature and returned by the 2005 legislature. LAWS OF 2003, 2d Spec. Sess., ch. 4, § 1; LAWS OF 2005, ch. 133, § 2. Since these cases began during the interregnum, application is arguably retroactive and improper, unless it was clarifying, curative, or remedial. See In re F.D. Processing, Inc., 119 Wash.2d 452, 832 P.2d 1303 (1992). We need not decide whether the 2005 amendment qualifies for retroactive application because we do not rest our opinion upon it.
[5] That former provision read:

In determining whether an individual has left work voluntarily without good cause, the commissioner shall consider the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies. Good cause shall not be established for voluntarily leaving work because of its distance from an individual's residence where the distance was known to the individual at the time he or she accepted the employment, nor because of any other significant work factor which was generally known and present at the time he or she accepted employment unless the related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor or unless the commissioner determines that other related circumstances would work an unconscionable hardship on the individual were he or she required to continue in the employment.
Former RCW 50.20.050(3) (1977); cf. RCW 50.20.050(1)(c).
[6] For example, the house bill report on the 2006 amendment, which reenacted the amendments to RCW 50.20.050 in the face of a constitutional subject-in-title challenge, supports the State's position. H.B. REP. on Engrossed H.B. 3278, at 2, 59th Leg. (Wash.2006) ("The `good cause quit' section enumerates reasons for leaving work that are considered to be good cause and not disqualifying."). Contrarily, the senate bill report indicates the bill was intended to extend the reporting deadline for the Joint Legislative Task Force on Unemployment Insurance Benefit Equity. S.B. REP. on Engrossed H.B. 3278, at 2, 59th Leg. (Wash.2006). No deadline extensions are mentioned in the enacted bill. Governor Locke's veto message also arguably supports both parties' interpretation. Veto Message on Second Engrossed S.B. 6097, 58th Leg., 2d Spec. Sess. (Wash.2003) ("I am not vetoing section 4, which establishes a list of personal and work-related reasons that an individual may quit for `good cause' and receive UI benefits while searching for other work.").
[7] We note that Division Two of the Court of Appeals found that the statutory list was exclusive based on the principle of expressio unius est exclusio alterius in Starr v. Employment Security Department, 130 Wash.App. 541, 123 P.3d 513 (2005). We respectfully disagree, and to the extent this opinion is inconsistent with Starr, it is overruled.
[8] We thank the parties and the Washington State Legislature for their excellent briefing on City of Fircrest v. Jensen, 158 Wash.2d 384, 143 P.3d 776 (2006), cert. denied, ___ U.S. ___, 127 S.Ct. 1382, 167 L.Ed.2d 162 (2007). Given our disposition of this case on statutory grounds, we will simply note that the holding of this court is the holding joined by a majority of the justices on a case. See, e.g., Southcenter Joint Venture v. Nat'l Democratic Policy Comm., 113 Wash.2d 413, 428, 780 P.2d 1282 (1989) (examining the various opinions in Alderwood Associates v. Washington Environmental Council, 96 Wash.2d 230, 635 P.2d 108 (1981)). A holding of a plurality of the court may be persuasive to some but has little precedential value. See, e.g., All-Pure Chem. Co. v. White, 127 Wash.2d 1, 8, 896 P.2d 697 (1995) (analyzing a split opinion).