FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9: 56

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LINDA K. KALASH, | No. 43947-6-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF EMPLOYMENT SECURITY, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Linda Kalash appeals the Employment Security Department's (Department) final order denying her unemployment benefits.[1] She argues that she is entitled to benefits because she quit her job for good cause under the Employment Security Act (Act).[2] She also argues that the Department commissioner erred by imposing additional requirements beyond those defined by the statutes and related regulations. Because substantial evidence supports the commissioner's finding that Kalash quit her job for personal reasons and because the

_____

[1] General Order 2010-1 of Division II, *In Re: Modified Procedures For Appeals Under The Administrative Procedures Act, Chapter 34.05, and Appeals Under the Land Use Petition Act, Chapter 36.70C RCW* (Wash. Ct. App.), available at http://www.courts.wa.gov/ appellate_trial_courts/, requires that the party filing an appeal in superior court, here Kalash, shall have the responsibility for the opening and reply briefs before our court and shall be entitled to open and conclude oral argument, whether designated as the appellant or respondent on appeal to this court.

[2] Title 50 RCW.

commissioner did not misapply or misinterpret the law in concluding that she did not have good cause to quit, we affirm.

FACTS

In August 2010, Kalash began working for La Petite Academy preschool center in Covington, where she lived. In March 2011, Kalash moved to Bremerton for personal reasons, making her commute substantially longer. She inquired about a job transfer to La Petite's sister company near Bremerton, but the sister company did not hire her so she looked for other jobs. On May 13, Kindercare child center in Bremerton offered her a full-time job starting May 31. On May 16, she gave La Petite notice that she was quitting and that her last day would be May 27. On May 26, Kindercare called Kalash and told her that they no longer had a job for her because the person who planned to leave decided to stay after all. Nonetheless, Kalash's last day at La Petite was May 27 and she did not ask La Petite if she could retain her job. Her replacement began on June 14.

In July, Kalash filed for unemployment benefits. On the Department's "Voluntary Quit" questionnaire, the Department asked, "Did you quit because you were hired for a new job?" Kalash responded, "No." Administrative Record (AR) at 50-51. To the question, "When did you decide to quit," Kalash wrote in "[c]ut hours 6 hours a week." AR at 50. She also told the Department that the main reason she quit was because her commute was about 100 miles each day after she moved to Bremerton, she was dissatisfied with the number of hours she was working at La Petite, and that she tried to transfer to La Petite's sister company but that the transfer did not work out. Later, La Petite challenged Kalash's request for unemployment benefits, arguing that she voluntarily quit to relocate and leave the area.

The Department denied Kalash benefits, finding that because she left her employment due to a lack of hours, she did not have good cause to quit and did not qualify for unemployment benefits. Kalash appealed the Department's denial of benefits. An administrative law judge (ALJ) conducted a phone hearing in September 2011. Kalash and the La Petite director testified. Kalash testified that she left La Petite because of the Kindercare job, but that she did not tell the Department about it because she did not know that it would make a difference in drawing unemployment benefits.

The ALJ found that Kalash was disqualified from receiving unemployment benefits because she left work voluntarily without good cause under RCW 50.01.010, RCW 50.20.050(2)(a),[3] WAC 192-150-085, WAC 192-320-070, and WAC 192-320-075. The ALJ found that she left La Petite due to the commute, the failure to get a transfer, and a reduction in hours. Further, the ALJ found Kalash failed to show that her hours were cut, and that it was only after being denied benefits that she claimed she quit in order to accept a bona fide offer of work. The ALJ also concluded that she failed to exhaust all reasonable alternatives available short of quitting because Kalash's belated assertions that she left La Petite due to the bona fide job offer were not credible and if she would have asked to rescind her resignation, La Petite would have retained her.

Kalash petitioned the Department commissioner for review of the ALJ's decision, arguing that she quit for good cause and that the ALJ erred in finding that she did not quit to accept a bona fide job offer. Kalash also argued that the ALJ erred because under RCW

---

[3] RCW 50.20.050 was amended twice during the 2009 legislative session, each without reference to the other. Throughout this opinion, we cite to the most recent version—RCW 50.20.050 (as amended by Laws of 2009, ch. 493, § 3, effective July 26, 2009).

3

50.20.050(2)(b)(i) and WAC 192-150-050, Kalash was not required to exhaust all reasonable alternatives prior to quitting and was not obligated to retain employment at La Petite in order to qualify for benefits. The commissioner agreed with the ALJ and adopted its findings of fact and conclusions of law subject to some minor additions and modifications. The commissioner explained that after reviewing the entire record and considering all factors relevant to credibility, it agreed with the ALJ that Kalash's testimony that the Kindercare job was the reason she quit was not credible. The commissioner also explained that

> [b]ecause the [Kalash] continued with her decision to quit work with [La Petite] after her new job offer was revoked, she did not quit because of a bona fide job offer. Indeed, as credibly testified to at [the] hearing, [La Petite] would have continued to employ [Kalash] after May 27, 2011, if [Kalash] had asked to rescind her resignation. . . . Rather, [Kalash] quit for personal reasons, *i.e.*, the additional cost of the commute caused by her moving from Covington to Bremerton.

AR at 85. The commissioner concluded that she quit for reasons other than accepting an offer of bona fide work and, therefore, Kalash failed to establish that she quit for good cause under RCW 50.20.050(2)(b).[4] Kalash appeals.

## ANALYSIS

Kalash challenges (1) the commissioner's finding that she quit her employment for personal reasons rather than because of a bona fide job offer, and (2) the commissioner's ultimate conclusion that she was not entitled to unemployment benefits. Kalash argues that because she quit only after receiving a bona fide job offer from Kindercare, she quit for good

---

[4] Upon Kalash's petition for review, the superior court reversed the commissioner, finding that Kalash quit due to a bona fide job offer and was entitled to unemployment benefits. But because we do not review the superior court's decision, and instead review the commissioner's decision, Kalash is treated as the appellant here. General Order 2010-1, *supra*; *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

cause under the plain language of RCW 50.20.050(2)(b)(i) and the commissioner erred by imposing additional requirements to show good cause beyond those defined by the statutes or related regulations. We disagree with Kalash's arguments. Because we must defer to the commissioner's credibility findings, we defer to its finding that Kalash's claim that she quit for a bona fide job offer was not credible. Viewing the evidence in this light, we conclude that substantial evidence supports the commissioner's finding that Kalash quit for personal reasons and that she did not have good cause to quit under the Act.

## I. STANDARD OF REVIEW

"The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of a final decision" by the Department commissioner. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). We sit in the same position as the superior court and apply the APA standards directly to the administrative record. *Verizon*, 164 Wn.2d at 915. We review the commissioner's decision, not the ALJ's underlying decision or the superior court. *Verizon*, 164 Wn.2d at 915.

We review the commissioner's findings of fact for substantial evidence in light of the whole record. RCW 34.05.570(3)(e); *Lee's Drywall Co. v. Dep't of Labor & Indus.*, 141 Wn. App. 859, 864, 173 P.3d 934 (2007); *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). Substantial evidence is evidence that would persuade a fair-minded person of the truth or correctness of the matter. *Cent. Puget Sound Growth Mgmt.*, 142 Wn.2d at 553. We neither weigh witness creditability "nor substitute our judgment for that of the agency." *Brighton v. Dep't of Transp.*, 109 Wn. App. 855, 862, 38 P.3d 344 (2001). Our review of disputed issues of fact is limited to the agency record. RCW 34.05.558.

Further, we review questions of law de novo and give substantial weight to the agency's interpretation of the statutes it administers. *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988); *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 32, 226 P.3d 263 (2010). "We consider a commissioner's decision to be prima facie correct and the 'burden of demonstrating the invalidity of agency action is on the party asserting invalidity,'" here Kalash. *Anderson v. Emp't Sec. Dep't*, 135 Wn. App. 887, 893, 146 P.3d 475 (2006) (quoting RCW 34.05.570(1)(a)). We may reverse the commissioner's decision if the commissioner based his decision on an error of law, if substantial evidence does not support the decision, or if the decision was arbitrary or capricious. RCW 34.05.570(3)(d), (e), (i). Where a statute is clear on its face, we derive its plain meaning from the statute's language alone. *Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007), *cert. denied*, 552 U.S. 1180 (2008). And substantial weight should be accorded to agency's legal interpretation if it falls within the agency's expertise in a specialized area of law. *Jefferson County v. Seattle Yacht Club*, 73 Wn. App. 576, 588, 870 P.2d 987, *review denied*, 124 Wn.2d 1029 (1994).

## II. DISCUSSION

The legislature adopted the Act to award unemployment benefits to "'persons unemployed through no fault of their own.'" *Courtney v. Emp't Sec. Dep't*, 171 Wn. App. 655, 660, 287 P.3d 596 (2012), *review denied*, 177 Wn.2d 1012 (2013) (quoting RCW 50.01.010). The Act disqualifies a person from receiving benefits if the person is to blame for their unemployment. *Courtney*, 171 Wn. App. at 660-61. Thus, the Act disqualifies a person from receiving benefits if she "left work voluntarily without good cause." RCW 50.20.050(2)(a). But the Act also provides that a person has good cause to leave work and will not be disqualified

from benefits if "she has left work to accept a bona fide offer of bona fide work." RCW 50.20.050(2)(b)(i).[5] To receive benefits due to a bona fide job offer, the claimant must "satisfactorily demonstrate" that

> (1) [p]rior to leaving work, [she] received a definite offer of employment; and
> (2) [She] had a reasonable basis for believing that the person making the offer had the authority to do so; and
> (3) A specific starting date and the terms and conditions of the employment were mutually agreed upon; and
> (4) [She] continued in [her] previous employment for as long as was reasonably consistent with whatever arrangements were necessary to start working at the new job; and
> (5) The new job is in employment covered by Title 50 RCW or the comparable laws of another state or the federal government.

WAC 192-150-050. The Act requires that the Department analyze each case's facts to determine the actual cause of the employee's separation. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392-93, 687 P.2d 195 (1984). And in order for a claimant to be eligible for benefits, the Act requires that the reason for the unemployment be external and apart from the claimant. *Safeco Ins.*, 102 Wn.2d at 392.

Here, the commissioner analyzed the facts of Kalash's case to determine what actually caused her separation and determined that personal reasons caused her separation—"*i.e.*, the additional cost of the commute caused by her moving from Covington to Bremerton." AR at 85. Several pieces of evidence in the administrative record support this finding: (1) in the

---

[5] RCW 50.20.050(2) provides,
> (a) An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has left work voluntarily without good cause and thereafter for seven calendar weeks. . . .
>
> . . . .
>
> (b) An individual has good cause and is not disqualified from benefits under (a) of this subsection only under the following circumstances:
> (i) He or she has left work to accept a bona fide offer of bona fide work as described in (a) of this subsection.

7

Department's Voluntary Quit questionnaire, Kalash answered "[n]o" to the question "[d]id you quit because you were hired for a new job?" AR at 19; (2) in her letter attached to the questionnaire, she explained that she was dissatisfied with the number of hours she was working and that after she moved to Bremerton, she asked La Petite if she could work more hours, get a raise, or be transferred, but that after the transfer did not work out she could no longer afford the travel expenses; and (3) she testified that when she started her job at La Petite she was living in Covington, but that after she moved, she needed to find something closer to her new home.

Kalash is correct that contrary to that evidence, she also testified at the hearing that the Kindercare job was actually the primary reason she left La Petite. But like all other testimony at an administrative hearing, the ALJ and the commissioner are in the best position to evaluate it and determine whether the person's testimony was truthful. Here, after reviewing the entire record, the ALJ and the commissioner determined that Kalash was not being fully truthful and that she fabricated some of the Kindercare story after realizing that the Department would deny her benefits. We do not weigh witness credibility nor substitute our judgment for the agency's. *Brighton*, 109 Wn. App. at 862. Because substantial evidence supports the commissioner's finding that Kalash's unemployment was due to personal reasons, the cause of her unemployment was not external and apart from her, and the commissioner was correct in determining that she was not eligible for benefits. *See Safeco Ins. Cos.*, 102 Wn.2d at 392.

Next, Kalash argues that the commissioner misinterpreted and misapplied the law because the commissioner (1) essentially found that she had a bona fide job offer, thus it should have found her eligible for benefits, and (2) inappropriately imposed requirements on her to exhaust reasonable alternatives to revoke her resignation after her job offer fell through. But ultimately Kalash's arguments are misplaced because even if Kalash had a bona fide job offer,

the commissioner found that the offer was not the actual reason for her leaving work at La Petite. The plain language of RCW 50.20.050(2)(b)(i) provides that in order to have good cause for quitting, the individual must have *left work to accept* a bona fide offer. Because the commissioner found that Kalash did not actually *leave work to accept* a bona fide offer, but rather left for personal reasons, then it does not matter whether she actually had a job offer or not. Kalash has failed to show that the commissioner misinterpreted or misapplied the law.

Kalash also argues that (1) she should not be denied benefits for failing to report to the Department that she had the bona fide offer because she did so before she had legal counsel, and (2) the commissioner should not have relied on Kalash's responses to the Department's questionnaire in determining whether she quit for good cause. But these arguments are not supported by any legal authority. And the commissioner had a duty to analyze all the facts in the record, including Kalash's questionnaire responses and her letter of explanation to the Department to determine what actually caused her separation from La Petite. RCW 34.05.570(3)(e); *Safeco Ins. Cos.*, 102 Wn.2d at 393-94. And although Kalash argues that the ALJ and the commissioner did not need to make any credibility determinations, such determinations were necessary because Kalash gave conflicting reasons about why she quit— whether it was (1) due to personal reasons such as being dissatisfied with the number of hours she received at La Petite, which she alleged until she realized she would be denied benefits; or (2) due to the Kindercare job offer, which she alleged at the ALJ hearing. Again, the commissioner determined that Kalash left due to personal reasons, substantial evidence supports that finding, and we do not weigh witness credibility or substitute our judgment for the agency's. *Brighton*, 109 Wn. App. at 862.

Ultimately, Kalash has the "'burden of demonstrating the invalidity of agency action'" here and has failed to persuasively argue that the commissioner erred. *Anderson*, 135 Wn. App. at 893 (quoting RCW 34.05.570(1)(a)). Kalash has not met her burden on appeal.

## III. ATTORNEY FEES

Kalash argues that she is entitled to reasonable attorney fees and costs under RCW 50.32.160, RCW 4.84.350, and RAP 18.1. But because she does not prevail in reversing or modifying the commissioner's decision, she is not entitled to attorney fees or costs.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J.

We concur:

BJORGEN, J.

MAXA, J.