[No. 42250-6-II.   Division Two.   August 14, 2012.]

HEATHER COURTNEY, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Marcus Robert Lampson* (of *Unemployment Law Project*), for appellant.

*Robert M. McKenna, Attorney General,* and *Dionne M. Padilla-Huddleston, Assistant,* for respondent.

¶1 JOHANSON, J. — Heather Courtney appeals the Washington Employment Security Department commissioner's decision to deny her unemployment benefits. She argues that she was entitled to receive unemployment benefits because her employer fired her. We affirm because after she tentatively refused her new manager's offer of continued employment, Courtney voluntarily and intentionally quit her employment by choosing neither to report to work nor to respond to her new managers, even when informed that her silence was a rejection of their offer.

## FACTS

### I. SEPARATION FROM EMPLOYMENT

¶2 Starting in 2007, Heather Courtney worked as an event manager for The Manor Inc., a family business co-owned by Douglas Zahn (50 percent owner and Courtney's manager) and Francesca Cohn (50 percent owner). Their sister, Carmela Mabbutt, served as corporate president. In

2010, after Courtney returned from her scheduled vacation, Zahn phoned Courtney to tell her that there had been a family dispute and his sisters had removed him from his management position but that he was contesting his removal. Zahn told Courtney not to go to work until further notice. Courtney asked about her paycheck, and Zahn told her to go to the office and retrieve it but not to speak to any of the family members.

¶3 When Courtney went to the office, she saw workers repairing a broken door and folders and papers strewn all over her desk. Crying, she collected her paycheck, her personal things, and a binder with mementos from clients. Mabbutt and Cohn saw Courtney and told her that her job was safe and that they wanted her to work for them. Courtney tried not to talk with them because she considered Zahn to be her manager. She told them that she was not sure that she could work for them and that she needed two days to think about it. They told her that they hoped she would work for them and agreed to give her the two days to decide. Mabbutt asked about the binder Courtney was holding, saying that it looked like The Manor Inc. property. Mabbutt took several items from Courtney's binder, and Courtney left, feeling scared and crying.

¶4 Courtney's next scheduled work day was the following Monday; she worked from home that day and every day that week, considering this arrangement to be authorized by Zahn but without informing Mabbutt or Cohn. Although Courtney kept in daily contact with Zahn, she never contacted Mabbutt or Cohn because she rejected their authority. On Friday, Mabbutt phoned Courtney and left a voice mail message stating that because Courtney had neither contacted her nor come in to the office that week, she had concluded that Courtney had resigned. Courtney did not return Mabbutt's phone call or contact her but contacted Zahn instead. Mabbutt then sent Courtney a letter terminating the employment relationship. The letter stated that The Manor Inc. "dismissed" Courtney for unexcused absen-

teeism, adding, "We're sorry that you have decided not to work for The Manor, Inc. any longer." Commissioner's Record (CR) at 112.

## II. Procedure

¶5 Courtney applied for unemployment benefits. Responding to the Washington Employment Security Department's (Department) questionnaire, The Manor Inc. explained the employment separation by checking the "quit" box and also checking a box in the "discharged" section, both times writing "continued, unexcused absenteeism." CR at 85-86. The Manor Inc. stated that Courtney quit after a change in management because she did not report or respond after new management asked her to continue to work. The Department denied Courtney's application, reasoning that she voluntarily quit her employment without good cause.

¶6 Courtney appealed that decision to an administrative law judge (ALJ); Courtney testified that she never affirmatively said that she quit, and that she had no intention to quit working under Zahn, whom she recognized as her only legitimate manager. The ALJ affirmed the Department's decision. Courtney then petitioned for review by the Department's commissioner, who affirmed the Department's initial order. Courtney petitioned for judicial review to the superior court, which affirmed the commissioner's decision. Courtney appeals.

## ANALYSIS

¶7 Courtney argues she was entitled to receive unemployment benefits because her employer fired her. The Department responds that Courtney intentionally acted, knowing that discharge would result; therefore, she voluntarily quit. The Department is correct.

STANDARD OF REVIEW

¶8 In reviewing a superior court's final order on review of a commissioner's decision, we "appl[y] the standards of the Administrative Procedure Act [(APA)[1]] directly to the record before the agency, sitting in the same position as the superior court." *Honesty in Envtl. Analysis & Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 96 Wn. App. 522, 526, 979 P.2d 864 (1999). We review only the commissioner's decision, not the administrative law judge's decision or the superior court's ruling. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). We review the commissioner's legal determinations using the APA's "error of law" standard, which allows us to substitute our view of the law for the board's. *Verizon Nw.*, 164 Wn.2d at 915; *see* RCW 34.05-.570(3)(d). We review an agency's interpretation or application of the law de novo. *HEAL*, 96 Wn. App. at 526. We give substantial weight to an agency's interpretation of the law within its expertise, such as regulations the agency administers. *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 885, 154 P.3d 891 (2007); *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.3d 839 (2007). We will uphold an agency's findings of fact if, when viewed in light of the whole record before the court, substantial evidence supports it. *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 411, 914 P.2d 750 (1996).

¶9 The legislature enacted the Employment Security Act (Act)[2] to award unemployment benefits to "persons unemployed through no fault of their own." RCW 50.01.010; *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392, 687 P.2d 195 (1984). The Act disqualifies a person from receiving benefits if the individual worker is to blame for the unem-

---

[1] Ch. 34.05 RCW.

[2] Title 50 RCW.

ployment. *Safeco*, 102 Wn.2d at 392. Thus, the Act disquali-fies a person from receiving benefits if she "left work voluntarily without good cause."[3] RCW 50.20.050(2)(a). The phrase "left work voluntarily" in RCW 50.20.050 is a legal phrase determined by the facts of the case. *Read v. Emp't Sec. Dep't*, 62 Wn. App. 227, 233, 813 P.2d 1262 (1991). The Act requires the Department to analyze the facts of each case to determine what actually caused the employee's separation. *Safeco*, 102 Wn.2d at 392-93. A voluntary ter-mination requires a showing that an employee intention-ally terminated her own employment or committed an act that the employee knew would result in discharge. *Vergeyle v. Emp't Sec. Dep't*, 28 Wn. App. 399, 402, 623 P.2d 736, *review denied*, 95 Wn.2d 1021 (1981), *overruled on other grounds by Davis v. Dep't of Emp't Sec.*, 108 Wn.2d 272, 737 P.2d 1262 (1987).

¶10 Courtney argues that to demonstrate intent to quit, she must affirmatively act, not merely fail to act. She highlights cases where the employee signed a document stating, " 'I understand termination of employment will result' " or wrote a resignation letter. *Vergeyle*, 28 Wn. App. at 401; *Safeco*, 102 Wn.2d at 393. But neither RCW 50.20.050(2) nor case law requires a written distillation of intent or that intent be affirmatively expressed as distin-guished from a failure to act. Instead, a voluntary termina-tion requires that an employee intentionally act, knowing that discharge would result. *Vergeyle*, 28 Wn. App. at 402. Here, Courtney asked for two days to decide whether she would work under the new management; yet, she never responded to The Manor Inc.'s offer of continued employ-ment, even when she knew her new managers concluded

---

[3] Another section of the Act provides for discharge due to misconduct. RCW 50.20.060(1). Both sections will not apply to the same set of facts. *Safeco*, 102 Wn.2d at 389. Without analysis, citation to the statute, or citation to authority, Courtney adds as "issue in reply" whether Courtney was fired without proof of misconduct. Reply Br. of Appellant at 2 (capitalization omitted). We will not consider claims not supported by citation to authority, references to the record, or meaningful analysis. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

that she had rejected their employment offer. Courtney did not suffer from physical pain or a disability constraining her actions or limiting her choices. Instead, she did not contact Mabbutt or Cohn because it was her intent to work only under Zahn. Neither RCW 50.20.050(2) nor case law distinguishes an act from a failure to act; we decline to see her intentional choice not to act as less than an act.

¶11 Courtney also argues that the commissioner impermissibly applied the theory of "constructive quit" to her claim. Br. of Appellant at 18. Washington has not adopted the voluntary constructive quit doctrine, which doctrine permits a finding that an employee quit, without a showing that the employee acted with intent. *Bauer v. Emp't Sec. Dep't*, 126 Wn. App. 468, 478-79, 108 P.3d 1240 (2005). Under the "constructive voluntary quit" doctrine, the reviewing agency or court may deem an employee to have constructively quit when an employee acts in a manner that might result in discharge, and later the employer in fact discharges that employee. *Bauer*, 126 Wn. App. at 478-79. The commissioner did not, however, apply the doctrine of constructive quit but, rather, concluded that Courtney acted to separate employment by failing to report or to respond after her employer requested she work under new management and after she requested two days to consider their offer.

¶12 Courtney implies that her desire to continue working for Zahn demonstrates that she had no intention of quitting her employment. But Mabbutt, Cohn, and Zahn all informed Courtney that Zahn was no longer the acting manager. Here, Mabbutt and Cohn told Courtney that her job was safe and that they wanted her to continue to work for them. Courtney responded that she was not sure that she could work under them; she collected her paycheck and personal things, and she asked for two days' time to think about their offer. Although they gave her the time to decide, Courtney neither reported to work nor contacted Mabbutt or Cohn, her new managers. After a week without response

from Courtney, Mabbutt phoned Courtney and left a voice mail message stating that because Courtney had not contacted her or come in to the office that week, she concluded that Courtney had resigned. Despite this voice mail message expressly informing Courtney that her new managers concluded that she was unwilling to work for them and that she intended to quit, Courtney still did not contact Mabbutt or Cohn. Under these facts, The Manor Inc.'s letter stating that The Manor Inc. "dismissed" Courtney for unexcused absenteeism did not change the nature of the job separation from a voluntary quit to a discharge. *See Safeco*, 102 Wn.2d at 393; CR at 28, 112. Although the letter formally terminated the employment relationship, we conclude that Courtney's deliberate choice not to report to work or to respond to The Manor Inc.'s offer to continue to work under the new management demonstrates her intent to quit. The Manor Inc.'s letter supports this conclusion because it added, "We're sorry that you have decided not to work for The Manor, Inc. any longer." CR at 112.

¶13 We hold that Courtney, " 'by . . . her own choice, intentionally, of . . . her own free will, terminated the employment.' " *Vergeyle*, 28 Wn. App. at 402 (quoting *Allen v. CORE Target City Youth Program*, 275 Md. 69, 79, 338 A.2d 237 (1975)). Therefore, the commissioner properly concluded that Courtney voluntarily quit her employment.

## ATTORNEY FEES

¶14 Courtney argues that she is entitled to an award of attorney fees and costs under RCW 50.32.160, which authorizes attorney fees to the prevailing party for an unemployment claim. Courtney, however, does not prevail, and we deny an award of attorney fees.

¶15 We affirm the Employment Security Department commissioner's decision, and accordingly we affirm the superior court.

WORSWICK, C.J., and HUNT, J., concur.

Review denied at 177 Wn.2d 1012 (2013).