FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9: 02

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LINDA DARKENWALD, | No. 44376-7-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. – The Employment Security Department (the Department) appeals the superior court's reversal of the Department Commissioner's order denying Linda Darkenwald unemployment benefits. Darkenwald left her job as a dental hygienist because she believed that her injured neck and back prevented her from working the increased hours her employer required. Darkenwald argues that she qualifies for unemployment benefits because she either was discharged or voluntarily left her job for good cause, or because as a part-time employee RCW 50.20.119 allowed her to reject a job requiring more than 17 hours of work per week without disqualifying her from benefits. She also moves this court to dismiss the Department's appeal as moot, arguing that its payment of unemployment benefits to her after the filing of its notice of appeal constituted a final determination of benefits that cannot be recouped without evidence of fraud, misrepresentation, or nondisclosure.

We hold that (1) because the superior court directed the Department to pay unemployment benefits to Darkenwald and the Department appealed that ruling, that payment did not constitute a final determination of benefits that moots this appeal; (2) Darkenwald was not discharged but instead left work voluntarily, and therefore was required to prove that she had good cause for leaving in order to receive unemployment benefits; (3) Darkenwald did not have good cause to leave work because she failed to prove that (a) her disability was her primary reason for leaving, or (b) her employer caused a 25 percent reduction in her hours; and (4) RCW 50.20.119 does not apply to currently employed workers, and therefore does not allow her to qualify for unemployment benefits. Accordingly, we reverse the superior court, affirm the Department Commissioner's order denying Darkenwald unemployment benefits, reverse the superior court's award of attorney fees to Darkenwald attorney fees, and deny Darkenwald's request for attorney fees on appeal.

## FACTS

Darkenwald began working as a dental hygienist in Dr. Gordon Yamaguchi's office in 1985. In 1998, she suffered a neck and back injury and filed a claim for benefits with the Department of Labor and Industries (L & I). L & I provided benefits and stated that Darkenwald had a permanent impairment. For the next eight years, Darkenwald continued to work either three or four days per week. In 2006, Darkenwald reduced her hours from three to two days per week, working approximately 15-16 hours per week on Mondays and Wednesdays. She later asserted that the reduction was because her chronic pain made it impossible for her to work more. Yamaguchi later asserted that the reduction was so that Darkenwald could spend more time with her family.

On July 28, 2010, Yamaguchi told Darkenwald that he needed her to work three days per week because his practice had grown. Yamaguchi suggested that Darkenwald work on Fridays to extend her hours to three days per week, or alternatively to work as an on call hygienist. In response to Yamaguchi's request that she work three days per week, Darkenwald stated, "I hear you saying that I am fired." Administrative Record (AR) at 22. She later asserted that she believed Yamaguchi's request that she either work three days per week or accept work as a substitute hygienist meant that he was firing her due to her disability because she did not have a meaningful choice that would allow her to maintain her employment.

Yamaguchi's wife, the office manager, told Darkenwald that a replacement hygienist had been hired and asked Darkenwald to continue working until August 23, the replacement's start date. On August 2, Darkenwald returned to work but sent a letter to Yamaguchi stating that she had been fired and declining to work after that date. The letter did not mention any health concerns or request consideration of any other alternatives. Yamaguchi's office records reflect that the reason for Darkenwald's separation was "[d]ischarge" and stated that "[s]he refused to work three days. She could not do three days a week." AR at 131. Darkenwald later stated that she could not have worked three days per week because of her health and that she did not want to accept the substitute dental hygienist position because it would have amounted to a significant reduction in her hours, no paid holidays, and no reliable shifts.

In contrast, Yamaguchi claimed that he did not intend to fire Darkenwald and that she quit voluntarily. He stated that he asked her if she could work three days per week, but she said that she could not. He then asked if she could work Fridays, and she said she could not because of her husband's schedule. Darkenwald did not tell Yamaguchi that she could not work three

days per week because of her health condition. Yamaguchi stated that after their conversation, he did not believe that Darkenwald's employment had terminated and that he wanted her to work for him as a substitute dental hygienist.

Darkenwald filed a claim for unemployment benefits with the Department. She did not mention her disability in her initial application. The Department denied her claim, stating that she quit for personal reasons and therefore did not have good cause to terminate her employment. Darkenwald appealed to an administrative law judge (ALJ). The ALJ ruled that Darkenwald voluntarily quit employment without good cause under RCW 50.20.050, and therefore she was not entitled to unemployment benefits. Although disqualification from benefits is not required if a claimant quits due to "illness or disability" under RCW 50.20.050(2)(b)(ii), the ALJ ruled that Darkenwald "has not established that her medical condition was the reason she was not able to work on Fridays."[1] AR at 92. Darkenwald petitioned for review by the Department's Commissioner. The Commissioner affirmed the ALJ's decision and adopted the ALJ's findings and conclusions.

Darkenwald then petitioned for review by the superior court. The superior court concluded that the Commissioner's findings were not supported by substantial evidence and that Darkenwald quit with good cause, and therefore was entitled to unemployment benefits. The superior court reversed the Commissioner's denial of benefits and directed the Department to grant Darkenwald unemployment benefits. The superior court also awarded Darkenwald attorney fees.

---

[1] The ALJ also ruled that Darkenwald was not available for employment because she was unwilling to work on Fridays, and therefore was ineligible for unemployment benefits under RCW 50.20.010(1)(c). However, the superior court later reversed this ruling by stipulated order.

The Department appealed the superior court's order reversing the Commissioner's decision. After the Department filed its notice of appeal, it made the benefit payments to Darkenwald in compliance with the superior court's ruling.

ANALYSIS

A.  MOTION TO DISMISS APPEAL

As a threshold matter, Darkenwald moves to dismiss the Department's appeal under RAP 17.1 and RAP 17.4(d).[2] She argues that because the Department's payments to her after it filed its notice of appeal constituted a final determination of her benefit eligibility, RCW 50.20.160(3) precludes the Department from recouping those benefits and this appeal is moot. We disagree.

A case is moot if a court " 'cannot provide the basic relief originally sought . . . or can no longer provide effective relief.' " *Bavand v. OneWest Bank, F.S.B.*, 176 Wn. App. 475, 510, 309 P.3d 636 (2013) (alteration in original) (internal quotations marks omitted) (quoting *Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd.*, 131 Wn.2d 345, 350-51, 932 P.2d 158 (1997)). If a case is moot, we generally will dismiss the appeal. *Wash. Off Highway Vehicle Alliance v. State*, 176 Wn.2d 225, 232, 290 P.3d 954 (2012).

Darkenwald relies on RCW 50.20.160(3), which provides:

> A determination of allowance of benefits shall become final, *in absence of a timely appeal therefrom*: PROVIDED, That the commissioner may redetermine such allowance at any time within two years following the benefit year in which such allowance was made in order to recover any benefits improperly paid and for which recovery is provided under the provisions of RCW 50.20.190: AND PROVIDED FURTHER, That in the absence of fraud, misrepresentation, or nondisclosure, this provision or the provisions of RCW 50.20.190 shall not be

---

[2] RAP 17.1(a) allows a party to seek relief, other than a decision on the merits of the case, by filing a motion. RAP 17.4(d) allows a party to include a motion in a brief if it is "a motion which, if granted, would preclude hearing the case on the merits."

construed so as to permit redetermination or recovery of an allowance of benefits which having been made after consideration of the provisions of RCW 50.20.010(1)(c), or the provisions of RCW 50.20.050, 50.20.060, 50.20.080, or 50.20.090 has become final.

(Emphasis added.). Darkenwald argues that the Department's payment of benefits following the superior court's ruling was a final determination under RCW 50.20.160(3), and therefore the Department cannot recover payments it made to her pending this appeal unless it shows evidence of fraud, misrepresentation, or nondisclosure. She relies on four decisions published by the Department's Commissioner in which the Commissioner concluded that under RCW 50.20.160(3) the Department could not initially award benefits to a claimant, then make a redetermination of ineligibility for benefits and recoup the overpayments made absent a finding of fraud, misrepresentation, or nondisclosure. *In re Weingard*, Emp't Sec. Comm'r Dec.2d 920, 2008 WL 6691601 (2008); *In re Young*, Emp't Sec. Comm'r Dec.2d 951, 2010 WL 6795717 (2010); *In re Hendrickson-Jackson*, Emp't Sec. Comm'r Dec.2d 953, 2010 WL 6795719 (2010); *In re Hader*, Emp't Sec. Comm'r Dec.2d 952, 2010 WL 6795718 (2010).

However, Darkenwald's argument is inconsistent with a plain reading of the statute, which states that "[a] determination of allowance of benefits shall become final, *in absence of a timely appeal therefrom.*" RCW 50.20.160(3) (emphasis added). Here, because the Department appealed, its determination of benefits did not become final. Accordingly, we hold that the payments were not final determinations of benefits and that RCW 50.20.160(3) does not apply.

Further, in all of the cases Darkenwald cites, the Department initially *awarded* benefits and then later determined that the claimants were ineligible for those benefits. Subsequently, the claimants appealed to the Commissioner. Here, the Department *denied* eligibility, and Darkenwald appealed to the Commissioner and subsequently to the superior court. Because the

superior court reversed the Department's denial of benefits, the Department began making payments. Paying benefits pursuant to a superior court order is procedurally distinguishable from the Department's decision to rescind its own initial determination of benefits eligibility. Darkenwald provides no authority for her contention that the two situations are comparable or that RCW 50.20.160(3) should apply.

In addition, the Department was *required* to pay Darkenwald unemployment benefits once the superior court reversed the Commissioner's order because the benefits became due at that time. In *California Department of Human Resources Development v. Java*, 402 U.S. 121, 91 S. Ct. 1347, 28 L. Ed. 2d 666 (1971), the United States Supreme Court held that a California Unemployment Insurance Code provision allowing the state to withhold unemployment benefits from a claimant when an employer appealed from an initial determination of eligibility did not comply with Section 303(a)(1) of the Social Security Act. The Court held that the provision violated the requirement in the Social Security Act that state unemployment compensation programs must " 'be reasonably calculated to insure full payment of unemployment compensation when due.' " *Java*, 402 U.S. at 130 (quoting 42 U.S.C. §503(a)(1)). The Court also held that unemployment compensation becomes "due" at "the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions." *Java*, 402 U.S. at 133.

Although *Java* involved invalidation of a California statute that has no Washington equivalent, the reasoning underlying the case nevertheless applies. The Department was required to pay Darkenwald benefits when they became due, and the benefits became due when the

superior court reversed the Commissioner's denial of benefits and directed the Department to pay Darkenwald unemployment benefits.

We hold that RCW 50.20.160(3) does not preclude the Department from recovering payments made to Darkenwald if it succeeds on the merits. Accordingly, this case is not moot. We deny Darkenwald's motion to dismiss the Department's appeal.

B.    ELIGIBILITY FOR UNEMPLOYMENT BENEFITS

Darkenwald argues that the Department erroneously denied her unemployment benefits because she either was discharged or voluntarily left her job for good cause. We disagree.

The legislature enacted the Unemployment Security Act, chapter 55.20 RCW, to award unemployment benefits to "persons unemployed through no fault of their own." RCW 50.01.010; *Safeco Ins. Co. v. Meyering*, 102 Wn.2d 385, 392, 687 P.2d 195 (1984). "[T]o accomplish this end, the act provides for the payment of unemployment benefits to unemployed individuals unless a claimant is disqualified from receiving such benefits." *Meyering*, 102 Wn.2d at 388-89.

A claimant is disqualified from receiving benefits if he or she "left work voluntarily without good cause." RCW 50.20.050(2)(a). In other words, "if a worker 'voluntarily quits' her job, she will be denied benefits unless she has 'good cause' for quitting." *Meyering*, 102 Wn.2d at 389. Here, the parties dispute whether Darkenwald "left work voluntarily" and if so, whether she had "good cause" to leave.

1.    Standard of Review

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of a final decision of the Department's Commissioner. RCW 50.32.120; *Verizon*

*Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). Under the APA, the Commissioner is empowered to review the ALJ's decision regarding eligibility for unemployment benefits and is the final authority on that matter. RCW 50.32.080; *Bauer v. Emp't Sec. Dep't*, 126 Wn. App. 468, 472, 108 P.3d 1240 (2005). Therefore, we review only the Commissioner's decision, not that of the superior court or the ALJ, except to the extent that the Commissioner adopts the ALJ's findings of fact. *Kirby v. Emp't Sec. Dep't*, ___ Wn. App. at ___, 320 P.3d 123, 126-27 (2014); *Courtney v. Emp't Sec. Dep't*, 171 Wn. App. 655, 660, 287 P.3d 596 (2012), *review denied*, 177 Wn.2d 1012 (2013).

We consider a Commissioner's decision to be prima facie correct and the party challenging the decision bears the burden of demonstrating its invalidity. RCW 50.32.150; *Kirby*, 320 P.3d at 127. Therefore, although the Department is the appellant here, Darkenwald has the burden on appeal of establishing her entitlement to unemployment benefits. We sit in the same position as the superior court and apply the standards of the APA directly to the record before the agency. *Courtney*, 171 Wn. App. at 660. Because we sit in the same position as the superior court, we do not give deference to the superior court's rulings. *Verizon Nw.*, 164 Wn.2d at 915.

The APA sets out nine grounds for invalidating an administrative order. RCW 34.05.570(3). Darkenwald asserts three. First, she argues that the Commissioner erroneously interpreted or applied the law. *See* RCW 34.05.570(3)(d). We review the Commissioner's legal conclusions using the APA's "error of law" standard, which allows us to substitute our view of the law for the Commissioner's. *Verizon Nw.*, 164 Wn.2d at 915. We review an agency's interpretation or application of the law de novo. *Courtney*, 171 Wn. App. at 660. We give

substantial weight to an agency's interpretation of the law within its expertise, such as regulations the agency administers, but we are not bound by the agency's interpretation. *Courtney*, 171 Wn. App. at 660; *Affordable Cabs, Inc. v. Dep't of Emp't Sec.*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004).

Second, Darkenwald argues that substantial evidence does not support the Commissioner's order. *See* RCW 34.05.570(3)(e). We review the Commissioner's findings of fact for substantial evidence in light of the whole record. RCW 34.05.570(3)(e); *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 32, 226 P.3d 263 (2010). "Substantial evidence is evidence that would persuade a fair-minded person of the truth or correctness of the matter." *Smith*, 155 Wn. App. at 32-33. Findings to which error has not been assigned are verities on appeal and our review is limited to whether those findings support the commissioner's conclusions of law. *Brown v. Dep't of Health*, 94 Wn. App. 7, 13, 972 P.2d 101 (1998); *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993).

Third, Darkenwald argues that the Commissioner's decision was arbitrary and capricious under RCW 34.05.570(3)(i). "An agency acts in an arbitrary and capricious manner if its actions are willful, unreasoning and in disregard of facts and circumstances." *Lenca v. Emp't Sec. Dep't*, 148 Wn. App. 565, 575, 200 P.3d 281 (2009).

2. Statutory Interpretation

In evaluating Darkenwald's claims, we must interpret certain provisions in chapter 50.20 RCW and the Department's regulations in chapter 192-170 WAC. The interpretation of statutory language is a question of law that we review de novo. *Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 89, 124 P.3d 294 (2005). The primary goal of statutory interpretation is

to ascertain and give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9–10. The plain meaning of a statute is derived from all the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question. *Campbell & Gwinn*, 146 Wn.2d at 11-12.

> All of the language in the statute must be given effect so that no portion is rendered meaningless or superfluous. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999). . . . Related statutory provisions must be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the respective statutes. *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282 (2000). Statutes relating to the same subject matter will be read as complimentary. *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974). Finally, statutes should be construed to avoid unlikely, absurd, or strained consequences. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

*Bauer*, 126 Wn. App. at 474.

3. Leaving Work Voluntarily

Darkenwald argues that she did not leave work voluntarily because Yamaguchi gave her no choice – she had to work three days per week and endanger her health or leave. We disagree.

"The phrase 'left work voluntarily' in RCW 50.20.050 is a legal phrase determined by the facts of the case." *Courtney*, 171 Wn. App. at 661. Therefore, whether a worker voluntarily left work is a question of law that we review de novo, although we give substantial weight to the agency's decision. *Meyering*, 102 Wn.2d at 390. A claimant leaves work voluntarily for the purposes of RCW 50.20.050 if he or she either (1) intentionally terminated his or her own employment or (2) committed an act that the employee knew would result in discharge. *Courtney*, 171 Wn. App. at 661.

11

Here, the unchallenged findings of fact state that Darkenwald "was unwilling to consider working for [Yamaguchi] more than two days per week" and that she "decided to stop working for [him]." AR at 89-90. Substantial evidence in the record supports these findings. Yamaguchi testified that he "didn't consider her fired," and the Commissioner found his testimony to be more credible than Darkenwald's. AR at 26. And although Darkenwald testified that she believed she was fired, we do not make credibility determinations or weigh evidence. *Brighton v. Dep't of Transp.*, 109 Wn. App. 855, 862, 38 P.3d 344 (2001). Accordingly, we hold that the Commissioner did not err in concluding that Darkenwald voluntarily left work.

4.   Leaving Work for Good Cause

Because Darkenwald voluntarily left work, she was not entitled to unemployment benefits unless she can show that she had good cause for leaving. *Meyering*, 102 Wn.2d at 389. A claimant can establish good cause only if he or she establishes one of the circumstances set forth in RCW 50.20.050(2)(b). *Campbell v. Emp't Sec. Dep't*, 174 Wn. App. 210, 216, 297 P.3d 757 (2013), *aff'd,* ___ Wn.2d ___, ___ P.3d ___ (2014). Darkenwald argues that she had good cause to terminate employment because (1) leaving work was necessary due to her disability under RCW 50.20.050(2)(b)(ii) and (2) her hours were reduced by more than 25 percent under RCW 50.20.050(2)(b)(vi). We disagree.

a.   Separation Not Necessary Due to Disability

Darkenwald argues that she established good cause to leave work because she had a disability. Under RCW 50.20.050(2)(b)(ii), an employee who voluntarily leaves work will not be disqualified from benefits if "[t]he separation was necessary because of the . . . disability of the claimant." In order to establish good cause for leaving work due to a disability under RCW

12

50.20.050(2)(b)(ii), a claimant must show that (1) he or she left primarily because of the disability, (2) the disability made it necessary for the claimant to leave work, and (3) the claimant first exhausted all reasonable alternatives before leaving work. WAC 192-150-055(1).

### i. Disability

The Department's regulations define a "disability" as a sensory, mental, or physical condition that (1) is medically recognizable or diagnosable, (2) exists as a record or history, and (3) substantially limits the proper performance of the claimant's job. WAC 192-170-050(1)(a). The parties do not dispute that Darkenwald had a "disability." Darkenwald filed an L & I claim in 1998, and she was classified as having a permanent impairment. The unchallenged findings provide that Darkenwald "has a serious back and neck problem which becomes more painful if she works too much." AR at 89. The record also shows that Darkenwald saw medical professionals to treat her condition. Accordingly, we hold that Darkenwald had a "disability" for the purposes of RCW 50.20.050(2)(b)(ii).

### ii. Primary Reason for Leaving

Darkenwald challenges the Commissioner's finding that Darkenwald's primary reason for quitting was not her disability. The Commissioner stated: "Claimant had good personal reasons for quitting her job as she did not want to work more than two days per week. Claimant has not established that her medical condition was the reason she was not able to work on Fridays." AR at 92. This finding actually is listed as a conclusion of law in the order. However, because a determination of a claimant's primary reason for quitting is a factual question, we review this "conclusion" as a question of fact under the substantial evidence standard. *Wallace v. Emp't Sec. Dep't*, 51 Wn. App. 787, 792, n 2, 755 P.2d 815 (1988); *see also Tapper*, 122

Wn.2d at 406 ("When findings of fact are not explicitly delineated, or where those findings are buried or hidden within conclusions of law, it is within the prerogative of an appellate court to exercise its own authority in determining what facts have actually been found below.").

Darkenwald argues that the Commissioner erred in finding that the primary reason for her leaving was not her disability because the Commissioner relied on another finding that was later vacated (that she simply did not want to work on Fridays) and because the finding is not supported by substantial evidence. However, even assuming Darkenwald is correct that the evidence did not support the Commissioner's finding that she did not want to work on Fridays, other evidence in the record supports the finding that her primary reason for leaving was not her disability. Darkenwald did not tell Yamaguchi – in person or in her letter – that her physical impairment was the reason she could not increase her work week to three days. Darkenwald also did not mention her disability in her initial application for unemployment benefits. Further, Yamaguchi testified that Darkenwald stated that she did not want to increase her work hours because that would conflict with spending time with her family. Based on this evidence, we hold that the Commissioner's finding that Darkenwald's disability was not her primary reason for leaving work was supported by substantial evidence.

iii.    Necessary to Leave

Even if Darkenwald's disability was the primary reason she left her job, she cannot establish good cause because she failed to show that her disability made it necessary for her to leave work. A disability renders leaving work "necessary" if "the conditions are of such degree or severity in relation to [the claimant's] particular circumstances that they would cause a reasonably prudent person acting under similar circumstances to quit work." WAC 192-150-

14

055(4)(c). Further, the Department's regulations provide that if a worker leaves work because of a disability, "[a]ny restrictions on the type or hours of work [the worker] may perform must be supported by a physician's statement." WAC 192-150-060(2).

Here, Darkenwald presented no physician statement indicating that she had any restrictions on her ability to work three days a week. In fact, she presented no medical testimony at all. The fact that she had a permanent impairment does not necessarily mean that she was unable to work three days a week. We hold that because Darkenwald did not present any evidence from a physician stating that the number of hours she could work was restricted due to her disability, she failed to meet her burden of proving that her disability made it necessary for her to leave work.[3]

b.     Reduction in Usual Hours

Darkenwald also argues that she had good cause to terminate employment under RCW 50.20.050(2)(b)(vi) because her hours were reduced by more than 25 percent. Again we disagree.

Under RCW 50.20.050(2)(b)(vi), an individual has good cause to quit if the individual's hours are reduced by 25 percent or more. However, to constitute good cause for quitting work, some *employer* action must have caused the reduction in the employee's compensation. WAC 192-150-115(3). Here, Yamaguchi asked Darkenwald to work three days per week instead of her usual two. This was an *increase* in Darkenwald's hours and, therefore an increase in her compensation. Because Yamaguchi's action did not cause a reduction in compensation as

---

[3] Because Darkenwald's claim fails based on our rulings on primary reason for leaving and necessity, we need not address whether Darkenwald exhausted all reasonable alternatives prior to leaving work as required in RCW 50.20.050(2)(b)(ii) and WAC 192-150-055(1)(c).

15

required in WAC 192-150-115(3), Darkenwald did not have good cause to quit under RCW 50.20.050(2)(b)(vi).

Darkenwald points out that Yamaguchi suggested she work as an on call hygienist. She argues that if she had done this, her hours probably would have been reduced by more than 25 percent. However, "good cause must be based upon existing facts as contrasted to conjecture." *Korte v. Emp't Sec. Dep't*, 47 Wn. App. 296, 302, 734 P.2d 939 (1987). Although Darkenwald points to testimony that Yamaguchi had used four hygienists to cover 54 days of work in the preceding year, there is no evidence in the record that he would have continued to use four substitute hygienists instead of allowing her to work on all or most of the days a substitute was needed. Further, Yamaguchi stated that one of the reasons he wanted Darkenwald to work three days per week was so he would "not have four different temporary substitute hygienists come here." AR at 27. Therefore, it was just as plausible that Yamaguchi would have allowed Darkenwald to exclusively fill the temporary hygienist position, resulting in her hours not being reduced by more than 25 percent.

Yamaguchi wanted to increase, not decrease, Darkenwald's hours and Darkenwald's claim that her hours as an on call hygienist would have been reduced by more than 25 percent was conjectural. Accordingly, we hold that Darkenwald did not have good cause to quit under RCW 50.20.050(2)(b)(vi).

5. Part-Time Worker Status

Darkenwald next argues that because she was a part time worker, RCW 50.20.119 allowed her to reject a position with increased hours without disqualifying her from benefits. She apparently claims that RCW 50.20.119 essentially provides an alternative basis for showing

16

good cause to leave her employment apart from the provisions of RCW 50.20.050(2)(b). We disagree that RCW 50.20.119 applies to the circumstances here.

RCW 50.20.119(1) provides that:

[A]n otherwise eligible individual may not be denied benefits for any week because the individual is a part-time worker and is available for, seeks, applies for, or accepts only work of seventeen or fewer hours per week by reason of the application of RCW 50.20.010(1)(c), 50.20.080, or 50.22.020(1) relating to availability for work and active search for work, or failure to apply for or refusal to accept suitable work.

A "part-time worker" is an individual who did not work more than 17 hours per week in the year in question. RCW 50.20.119(2). Whether this statute applies only to workers who are currently unemployed or also to employed part-time workers is a question of first impression.

Darkenwald's claim that RCW 50.20.119 gave her good cause to quit work instead of accepting a request to work more hours fails for two reasons. First, Darkenwald's argument constitutes a misreading of the Department's statutes and regulations. RCW 50.20.119, the statute upon which Darkenwald primarily relies, applies to *unemployed* claimants seeking benefits. An unemployed individual seeking benefits must show, among other things, that "[h]e or she is able to work, and is available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." RCW 50.20.010(1)(c). Generally, to be "available for work," a claimant must be "willing to work full-time, part-time, and accept temporary work during all of the usual hours and days of the week customary for your occupation." WAC 192-170-010(1)(a). But the requirement to be available for full-time work does not apply "[i]f you are a part-time eligible worker as defined in RCW 50.20.119." WAC 192-170-070(1). Under those circumstances, the worker "may limit [his or her] availability for work to 17 or fewer hours per week. [He or she] may refuse any job of 18 or more hours per week." WAC 192-170-070.

Therefore, RCW 50.20.119 operates to protect an *unemployed* part-time worker seeking benefits from being disqualified if that worker refuses to accept full-time employment opportunities. Because Darkenwald was employed when Yamaguchi offered her an on call position, RCW 50.20.119 does not apply here.

Darkenwald nevertheless argues that the statute's and regulation's use of the present tense means that RCW 50.20.119 applies not only to job seekers, but also to those currently employed. She notes that RCW 50.20.119 provides that "an otherwise eligible individual may not be denied benefits for any week because the individual *is* a part-time worker and *is* available for, seeks, applies for, or accepts only work of seventeen or fewer hours per week." (Emphasis added.). And WAC 192-170-070(1) provides: "If you *are* a part-time eligible worker as defined in RCW 50.20.119, you may limit your availability for work to 17 or fewer hours per week. You may refuse any job of 18 or more hours per week." (Emphasis added.). But we must harmonize statutory provisions, and in light of the overall statutory scheme, we reject Darkenwald's interpretation. *Bauer*, 126 Wn. App. at 474. The provisions involving the claimant's ability to refuse full-time work as a part-time worker relate directly to the portion of the statute requiring claimants seeking benefits to be "available for work." RCW 50.20.010(1)(c). This provision, in turn, relates exclusively to "unemployed" individuals. RCW 50.20.010(1)(c). Accordingly, we reject Darkenwald's expansive reading of the statute and hold that RCW 50.20.119 and WAC 192-170-070 apply only to unemployed part-time workers seeking benefits.

Second, Darkenwald's argument would require us to read an additional "good cause" provision into the enumerated ways good cause can be established in RCW 50.20.050(2)(b)(i)-(xi). Before the legislature amended RCW 50.20.050(2)(b) in 2009, the statutory list of reasons

18

that established good cause to quit was considered a nonexclusive list. *Spain v. Emp't Sec. Dep't*, 164 Wn.2d 252, 259, 185 P.3d 1188 (2008). But we held in *Campbell* that in amending RCW 50.20.050(2)(b) in 2009, the legislature "made clear that good cause to quit was limited to the listed statutory reasons." 174 Wn. App. at 216. And our Supreme Court confirmed on review in *Campbell* that the holding in *Spain* does not apply to the 2009 amendments. ___ P.3d at ___ n.2. A part-time employee's decision to leave work after being asked to work more than 17 hours per week is not one of the eleven enumerated options in the statute. *See* RCW 50.20.050(2)(b)(i)-(xi).

We hold that RCW 50.20.119 applies only to workers who are currently unemployed. And we decline to adopt an additional reason for establishing good cause beyond the exclusive list in RCW 50.20.050(2)(b). Accordingly, Darkenwald cannot establish good cause for leaving her job on this basis.

D.     ATTORNEY FEES

The superior court awarded Darkenwald her attorney fees. RCW 50.32.160 provides that if the decision of the Commissioner is reversed or modified, attorney fees "shall be payable out of the unemployment compensation administration fund." But because we reverse the superior court and affirm the Commissioner's decision, we reverse the superior court's award of attorney fees.

Darkenwald also requests attorney fees on appeal under RCW 50.32.160 and RAP 18.1. Once again, because we now affirm the Commissioner's decision we deny Darkenwald's request for fees.

19

44376-7-II

We reverse the superior court and affirm the Commissioner's decision denying Darkenwald unemployment benefits, reverse the superior court's award of attorney fees to Darkenwald, and deny Darkenwald's request for attorney fees on appeal.

MAXA, J.

We concur:

BJORGEN, A.C.J.

LEE, J.