IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| MARIA C. SHERRY, | No. 54916-6-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, EMPLOYMENT SECURITY DEPARTMENT, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Maria Sherry voluntarily quit her job and now appeals a superior court order affirming the denial of her claim for unemployment benefits. She argues that she had good cause to quit because her work hours increased without a proportionate increase in her salary, thus amounting to a reduction in her compensation. We hold that a temporary increase in a salaried employee's work hours is not a reduction in compensation under RCW 50.20.050(2)(b)(v). Because neither the Employment Security Department (ESD) commissioner nor the superior court erred in applying the law, we affirm the superior court's order and the ESD commissioner's decision to deny benefits.

FACTS

I. BACKGROUND

Maria Sherry was an employee at Rite Aid from 2007 to 2019.[1] She was last employed as a store leader until the day she resigned on January 25, 2019. Sherry was a salaried, full-time, non-unionized employee earning $47,850 per year.

---

[1] All facts are taken from the findings of fact in the record on appeal, or are uncontested.

Sherry's assistant manager was discharged in November 2018. Rite Aid was actively recruiting to fill the position. After the store assistant was discharged, Sherry's hours increased from 50 hours per week to 65-70 hours per week, without any change in her salary. As a result of the increased hours, Sherry felt overworked and stressed. She reached out to a Rite Aid district leader about the stress she felt, and he instructed her to ask for assistance from neighboring stores. She received help from another store.

In early January 2019, Sherry suffered a panic attack and felt unwell for the following few days. She took a few days off work and returned on January 3. After returning to work, Sherry's district leader informed her of his expectations for completing the store's Valentine's Day decorations.

Although Sherry felt overworked and stressed, she did not make use of company resources available to her. For example, Sherry could have called the anonymous toll-free number for employee complaints; she could have emailed or submitted a complaint to human resources; and, she could have utilized the employee assistance program (EAP), a no-cost program available to Rite Aid employees that provides resources to help manage work-related stress and anxiety. She also could have requested a leave of absence, to which she was entitled.

Sherry feared that asking for help would make her appear incapable of doing her job, but she did not present any evidence as to why she had that belief. On January 25, 2019, Sherry quit her job and applied for unemployment benefits. The assistant manager position was still vacant when she left her job.

## II. PROCEDURAL HISTORY

The ESD denied Sherry unemployment benefits because she quit without good cause. Sherry appealed the decision, arguing, *inter alia*, that the increase in her work hours constituted a reduction in compensation and was, therefore, good cause to quit. An Administrative Law Judge (ALJ) affirmed the ESD's decision, making findings of fact consistent with the facts above. Sherry then requested review of the ALJ's decision by the ESD's commissioner, who adopted the findings and conclusions of the ALJ, and stated:

> We note claimant's valiant attempt to recast her working of additional hours for no increase in pay as a "decrease in wages." However, this argument ignores both the plain meaning of the statute, RCW 50.20.050(2)(b)(v), the definition of compensation set forth at RCW 50.04.320, and the relevant regulation, WAC 192-150-115.

Administrative Record (AR) at 92. Sherry then appealed the agency's final decision to the superior court. The superior court affirmed the ESD commissioner's decision and denied Sherry unemployment benefits.

Sherry appeals the superior court's decision.

## ANALYSIS

Sherry argues that the superior court erred in denying her benefits because she quit for good cause. Specifically, she argues that RCW 50.20.050(2)(b)(v) is ambiguous and should be construed in her favor, and that the ESD's interpretation of RCW 50.20.050(2)(b)(v) is contrary to the Employment Security Act's (ESA) purpose and leads to absurd consequences. Finally, she argues that the ESD's interpretation of the statute leads to all salaried employees waiving their rights under the statute. We disagree with all of Sherry's arguments.

I. STANDARD OF REVIEW

Judicial review of a final agency decision is governed by Washington's Administrative Procedure Act (APA). RCW 50.32.120; RCW 24.05.570. Generally, when this court reviews an agency's decision, it sits in the same position as the superior court and applies the APA directly to the agency's record. *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014). Thus, we review the commissioner's decision, not the "ALJ's decision or the superior court's ruling." *Michaelson v. Emp't Sec. Dep't*, 187 Wn. App. 293, 298, 349 P.3d 896 (2015). The commissioner's decision is considered prima facie correct, and the party challenging the decision bears the burden of proving that decision was in error. *Michaelson*, 187 Wn. App. at 298; RCW 34.05.570(1)(a).

Whether a person quits for good cause is a mixed question of law and fact. *Campbell*, 180 Wn.2d at 573. When there is a mixed question of law and fact, the APA allows a reviewing court to reverse an administrative decision when: (1) the administrative decision is based on an error of law; (2) the decision is not based on substantial evidence; or (3) the decision is arbitrary or capricious. RCW 34.05.570(3); *Tapper v. Emp't Sec. Dept.*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993). Because Sherry has not challenged any of the commissioner's factual findings on appeal, the commissioner's findings are verities on appeal and there are no questions of fact for our review. Thus, we review the questions of law de novo. *Tapper*, 122 Wn.2d at 403.

II. THE MEANING AND INTERPRETATION OF RCW 50.20.050(2)(b)(v)

A. *The Statute is Unambiguous*

1. *RCW 50.20.050*

Generally, RCW 50.20.050 disqualifies workers from earning unemployment benefits if

they voluntarily quit. RCW 50.20.050 provides that "an individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has left work voluntarily without good cause . . . ." RCW 50.20.050(1)(a). The statute further states under subsection (2)(b) that

> a[] [claimant] has good cause and is not disqualified from benefits under (a) of this subsection only under the following circumstances:
>
> . . .
>
> (v) The individual's usual compensation was reduced by twenty-five percent or more; [or]
>
> (vi) The individual's usual hours were reduced by twenty-five percent or more.

RCW 50.20.050(2)(b). "Usual" is defined to include "amounts actually paid to you by your employer or, if payment has not yet been made, the compensation agreed upon by you and your employer as part of your hiring agreement." WAC 192-150-115(2). The term "reduced" is undefined, but "in the absence of a statutory definition, [we give] the term its plain and ordinary meaning ascertained from a standard dictionary." *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004). The dictionary defines "reduced" as "made smaller." *Webster's Third New International Dictionary*, 1905, (Phillip Babcock Grove ed., 2002). WAC 192-150-115 instructs that "compensation" is "remuneration as defined in RCW 50.04.320." "Remuneration" is statutorily defined as:

> all compensation paid for personal services including commissions and bonuses and the cash value of all compensation paid in any medium other than cash. The reasonable cash value of compensation paid in any medium other than cash and the reasonable value of gratuities shall be estimated and determined in accordance with rules prescribed by the commissioner.

RCW 50.04.320(4)(a).

2. *Interpretation of RCW 50.20.050(2)(b)(v)*

Sherry argues that RCW 50.20.050(2)(b)(v) is ambiguous because it does not sufficiently define the term "compensation," and thus should be construed to apply to salaried employees whose work hours increased without a proportionate increase in pay. Br. of Appellant at 7. We disagree.

Our fundamental objective in interpreting a statute is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4, (2002). If the statute's meaning is plain on its face, then we must give effect to that plain meaning as an expression of legislative intent. *Campbell*, 146 Wn.2d at 9-10. Courts determine plain meaning from all that the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question. *Ctr. for Envtl. Law & Policy v. Dep't of Ecology*, 196 Wn.2d 17, 29, 468 P.3d 1064 (2020). If, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to construction aids, including legislative history. *Campbell*, 146 Wn.2d at 12.

An unambiguous statute is not subject to judicial construction. *Steen*, 151 Wn.2d at 518. A statute is not ambiguous simply because "different interpretations are conceivable." *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).

First, Sherry argues that the statute is ambiguous because the definition of "compensation" is circular: it defines "compensation" as "remuneration," which in turn includes that term "compensation" in its definition. Br. of Appellant at 7; WAC 192-150-115; RCW 50.04.320(4)(a).

The definition of compensation is somewhat circular because it essentially defines compensation as remuneration and then defines remuneration as "all compensation paid for personal services." RCW 50.04.321(4)(a); *see State v. Barnes*, 189 Wn.2d 492, 504, 403 P.3d 72 (2017) (defining "theft of a motor vehicle" as "theft of a motor vehicle" is circular). However, this fact alone does not make the statute ambiguous. We do not examine words in a vacuum to determine the legislature's intent. *Campbell*, 146 Wn.2d at 11-12. As stated above, we look to *all* the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question. *Ctr. for Envtl. Law & Policy*, 196 Wn. 2d at 29. Therefore, compensation must be interpreted consistently with the words that follow it: "commissions and bonuses and the cash value of all compensation paid in any medium other than cash." RCW 50.04.320(4)(a). The definition is expansive to include all payments made for personal services. RCW 50.04.320(4)(a). The definition is not ambiguous.

Even though the statute is somewhat circular, its meaning is unambiguous as it applies here because it is undisputed that Sherry earned a salary of $47,850 per year, and nothing in the record shows that she was entitled to commission, was eligible for bonuses, or that she received any other form of compensation. Therefore, Sherry's "usual compensation" is her annual salary of $47,850.

Next, Sherry argues that the term is open to two reasonable interpretations: one where compensation is calculated by the hour, and another where compensation is calculated by looking at the employee's earnings over a period of time. She illustrates the problem with a hypothetical:

> An hourly worker is initially paid $20 per hour (including the value of any benefits) and is required to work 30 hours per week. They earn $600 per week for their labor.

The employer reduces the employee's hourly wage to $15.00 per hour, but requires the employee to work 40 hours per week. The employee still earns $600.00 per week.

If compensation is calculated by the hour, the hypothetical employee's compensation was reduced by greater than 25% and they have rights under RCW 50.20.050(2)(b)(v). But if compensation is calculated weekly or by pay-period, the employee's total remuneration was not reduced at all and they have no rights under RCW 50.20.050(2)(b)(v).

Br. of Appellant at 7-8.

This hypothetical is not helpful for three reasons. First, the hypothetical ignores the definition of "usual" and "compensation" as defined in WAC 192-150-115(1), (2). Unlike the employee in the hypothetical, Sherry's usual compensation was $47,850 per year, regardless of how many hours she worked. Second, the hypothetical ignores the conditions of being a salaried employee, which include receiving full compensation regardless of fluctuating hours. And third, because Sherry's usual compensation remained unchanged, her usual compensation was not "reduced" as required by RCW 50.20.050(2)(b)(v).

We hold that the statute is unambiguous, and that Sherry failed to show that her compensation was reduced as required by RCW 50.20.050(2)(b)(v).

B. *The ESD's Interpretation of the Statute Is Not Contrary the Purpose of the Employment Security Act*

Sherry argues that the ESD's interpretation of RCW 50.20.050(2)(b)(v) is contrary to the ESA's purpose. The ESD does not address this argument, but it points out that the authority Sherry relies on does not address the current version of the statute. We agree with the ESD and hold that the ESD's interpretation is not contrary to the ESA's purpose.

Where a statute's meaning is plain on its face, our inquiry ends there. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Although we "[do] not subject

an unambiguous statute to statutory construction," *Cerrillo*, 158 Wn.2d at 201, we consider an enacted statement of legislative purpose, such as a preamble, in our plain language analysis. *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 310, 237 P.3d 256 (2010).

The ESA's preamble directs courts to "liberally construe" the statute to "reduc[e] involuntary unemployment." RCW 50.01.010. Sherry argues that we should liberally construe RCW 50.20.050(2)(b)(v) and hold that in addition to a reduction in compensation, the statute extends to a circumstance where an employer increases an employee's hours without a proportionate increase in compensation. However, Sherry's argument is misguided. The liberal construction requirement cannot be used to support a "strained or unrealistic interpretation" of statutory language. *Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n*, 133 Wn.2d 229, 243, 943 P.2d 1358 (1997). We are not authorized to override the express terms of the statute in the name of liberal construction. *Sedlacek v. Hillis*, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001).

To support her position, Sherry relies on *In Matter of Anderson*, 39 Wn.2d 356, 361, 235 P.2d 303 (1951), where our Supreme Court held that an employee who quits due to less favorable work conditions or substantially reduced wages might be entitled to unemployment benefits. She argues that *Anderson* justifies finding "good cause" for terminating employment when there is a substantial change in circumstances, such as an increase in work hours. But, *Anderson* did not examine the current version of the involuntary quit statute; in fact, it analyzed a version of the statute that did not contain a "good cause" definition. *Spain v. Emp't Sec. Dep't*, 164 Wn.2d 252, 258, 185 P.3d 1188 (2008) (citing LAWS OF 1937, ch. 162, § 5). The *Anderson*

court employed a case-by-case analysis as required by the former statute. *Spain*, 164 Wn.2d at 258. Thus, *Anderson* is no longer applicable.

After *Anderson*, the legislature narrowed the statutory definition of good cause twice. First, the legislature created two categories of good cause: good cause per se and good cause for personal reasons. *Spain*, 164 Wn.2d at 258 (citing LAWS OF 1977, 1st Ex.Sess., ch.33, § 4). Then, it adopted an exhaustive list of reasons constituting good cause. LAWS OF 2009, ch. 493, § 3.

The second amendment was in response to *Spain*, where our Supreme Court held that the legislature did not intend to create an exhaustive list of good cause reasons to quit. *Spain*, 164 Wn.2d at 259. After *Spain*, the legislature amended RCW 50.20.050 and included an exclusivity provision limiting good cause to *only* the eleven reasons listed in the statute. *Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 251, 350 P.3d 647 (2015) (citing LAWS OF 2009, ch. 493, § 3); RCW 50.20.050 (a), (b).

The legislative intent is clear from the statute's language, and it is further bolstered by the legislative history. Therefore, we hold that the ESD's interpretation is not contrary to the purpose of the ESA.

C.      *The ESD's Interpretation Would Not Lead to Absurd Results*

Sherry argues that the ESD's interpretation of RCW 50.20.050(2)(b)(v) leads to absurd results because it would allow employers to manipulate hours and pay rates to avoid unemployment claims. We disagree.

Courts presume that the legislature does not intend absurd results, and where possible, interpret ambiguous language to avoid such absurdity. *State v. Skrobo*, 17 Wn. App. 2d 197,

10

201, 485 P.3d 333 (2021). When determining the plain meaning of a statute, we avoid a literal reading "if it would result in unlikely, absurd or strained consequences." *Thurston County. ex rel. Snaza v. City of Olympia*, 193 Wn.2d 102, 108, 440 P.3d 988 (2019).

Although Sherry argues that ESD's interpretation would lead to absurd consequences, we find the converse to be true; it is Sherry's interpretation that would lead to absurd consequences. Sherry's interpretation is that a temporary increase in a salaried worker's hours would constitute good cause. This would defeat the nature of salaried work and would affect all executives and other exempt employees. For example, retail and service managers, attorneys, doctors, and all salaried positions would be affected.[2] This would materially alter the expectation of both employees and employers in hiring a salaried worker.

We hold that RCW 50.20.050(2)(b)(v) is unambiguous, and that the ESD's interpretation is not contrary to the ESA's purpose nor does it lead to an absurd result.

### III. THE RIGHTS OF SALARIED EMPLOYEES UNDER THE STATUTE

Next, Sherry argues that the ESD's interpretation amounts to a waiver by all salaried employees of their rights under the statute. We disagree.

RCW 50.40.010(1) voids any employment agreement that requires an employee to waive their statutory rights to benefits. It provides that "[a]ny agreement by an individual to waive, release, or commute his [or her] rights to benefits or any other rights under this title shall be void." RCW 50.40.010 (1); *Shoreline Cmty. Coll. Dist. No. 7 v. Emp't Sec. Dep't*, 120 Wn. 2d

---

[2] At oral argument, Sherry stated that this court could limit her interpretation to retail managers, but could point to no case law or statutory language that would allow us to do so.

394, 402, 842 P.2d 938 (1992).[3] Thus, under the statute, an employment agreement cannot waive an employee's right to seek unemployment benefits, assuming they are entitled to such benefits under the statute. Since Sherry was not entitled to unemployment benefits, she did not waive any rights under the statute.

Salaried employees enjoy certain benefits. "Salary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. . . . The salaried employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it." *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 302, 996 P.2d 582 (2000). Subject to specific deductions, a salaried employee "must receive full salary for any week during which work is performed without regard to the number of hours worked." *Clawson v. Grays Harbor Coll. Dist. No. 2*, 148 Wn.2d 528, 542, 61 P.3d 1130 (2003).

Sherry argues that because the hiring agreement allows her employer to indefinitely increase her hours, the ESD's interpretation of the statute means that all employment agreements for salaried employees effectively require employees to waive their rights under the ESA and, therefore, would be void. Specifically, she argues that such agreements waive employee rights under RCW 50.20.050(2)(b)(v) and RCW 50.20.050(2)(b)(vi) because both subsections "work to protect employees from adverse changes in their usual compensation or hours." Br. of Appellant at 11. But the plain meaning of the statute does not address a temporary increase in a salaried employee's hours. Subsection (v) protects employees from the employer reducing their usual

---

[3] The statute has been amended since the *Shoreline* court interpreted it, but the relevant subsections remain unchanged, and the amendments do not affect our analysis. LAWS OF 1945 ch. 35, § 182.

compensation by 25 percent or more. RCW 50.20.050(2)(b)(v). And subsection (vi) protects employees from employers reducing their hours by 25 percent or more. RCW 50.20.050(2)(b)(vi). Both subsections protect employees from a *reduction* in either hours or compensation by 25 percent or more, but the statute does not protect employees from an increase in hours.

The ESD argues that the statute should be interpreted to mean that an employee cannot agree to waive their right to unemployment benefits to relieve an employer of their tax burden, and that an employee cannot pay an employer's unemployment taxes. The ESD relies on subsection (2), which states that "[a]ny agreement by an individual in the employ of any person or concern to pay all or any portion of an employer's contributions, required under this title from such employer, shall be void." RCW 50.40.010(2). The ESD asserts that subsections (1) and (2), read together, "simply [mean] . . . that an employee cannot agree to waive their right to unemployment benefits to relieve their employer of their tax burden, and an employer cannot require an employee to pay the employer's unemployment taxes on their wages." Br. of Resp't at 16. But these statutes are not read together. Both subsections (1) and (2) describe different scenarios. We do not conflate these sections to reach our result. Regardless, Sherry's argument fails for the reasons set forth above.

Sherry is not entitled to benefits because she failed to meet the good cause definition in RCW 50.20.050(2)(b)(v), so she had no "right" to relinquish. Because Sherry did not demonstrate her right to unemployment benefits under RCW 50.20.050(2)(b)(v), the ESD's interpretation of that statute does not amount to a waiver. Therefore, we hold that Sherry did not waive any rights under RCW 50.20.050(2)(b)(v).

No. 54916-6-II

IV. CONCLUSION

Sherry is not entitled to unemployment benefits because she did not involuntarily quit her job for good cause under RCW 50.20.050(2)(b). The ESD's interpretation of that statute is not contrary to the ESA's purpose, does not lead to absurd consequences, and does not amount to a waiver of employees' rights. Therefore, Sherry failed to show good cause as required under RCW 50.20.050(2)(b), and she is not entitled to benefits.[4]

We affirm the superior court order and the ESD commissioner's decision to deny benefits.

Worswick, J.

We concur:

Lee, C.J.

Glasgow, J.

---

[4] Sherry also argues that she is entitled to reasonable attorney fees, but because she did not meet her burden of proving that the ESD commissioner's decision was erroneous, she is not entitled to attorney fees. RCW 50.32.160; *Darkenwald v. Emp't Sec. Dep't*, 182 Wn. App. 157, 179, 328 P.3d 977 (2014).

14